IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MAXINE WHITE, § § Plaintiff, § § v. § § FRONTIER AIRLINES, INC., § § Defendant/Third Party Plaintiff, § § v. § § THE AUSTIN FIRE DEPARTMENT, § THE CITY OF AUSTIN AVIATION § DEPARTMENT, AUSTIN-BERGSTROM § INTERNATIONAL AIRPORT, § THE CITY OF AUSTIN AND § HUNTLEIGH USA CORPORATION § § Third-Party Defendants. § | CASE NO. 1:16-CV-1266(LY) JURY DEMAND |

**DEFENDANT/THIRD-PARTY PLAINTIFF FRONTIER AIRLINES, INC.'S FIRST AMENDED THIRD-PARTY COMPLAINT AGAINST HUNTLEIGH AND CITY OF AUSTIN**

Defendant/Third-Party Plaintiff, Frontier Airlines, Inc. ("Frontier"), pursuant to Rule 14 of the Federal Rules of Civil Procedure, hereby files this First Amended Third-Party Complaint ("The Complaint") against the Austin Fire Department ("AFD"), the City of Austin Aviation Department ("Aviation Department"), the Austin-Bergstrom International Airport ("ABIA"), the City of Austin ("City") and Huntleigh USA Corporation ("Huntleigh"), and would respectfully show the Court as follows:

**I.
JURISDICTION AND VENUE**

1. This Court has jurisdiction over the dispute between Plaintiff Maxine White and Frontier.

1

2. This Complaint asserts that Third-Party Defendants, the AFD, the Austin Aviation Department, ABIA, the City and Huntleigh, are liable to Frontier for the liability, if any, Frontier may owe to Plaintiff. The claims asserted in this Complaint arise out of the same facts and circumstances as those of the original Complaint (ECF No.1-2) filed by Plaintiff ("Plaintiff's Complaint"), so that this Court may exercise supplemental jurisdiction over this third-party action under the provisions of 28 U.S.C.§1367(a).

3. This Court has jurisdiction over the federal question raised by Plaintiff's Complaint, as well. Plaintiff raises violation of the Americans with Disability Act ("ADA").

4. Venue is proper in this Court, pursuant to 28 U.S.C. §1391, in that the events giving rise to this lawsuit occurred in this judicial district.

## II.
## FRONTIER'S CLAIMS ARE NOT BARRED BY IMMUNITY

5. The City, the Austin Aviation Department and ABIA are not subject to governmental immunity because they performed certain proprietary acts that form the basis of this suit.

6. In addition, the City, the Austin Aviation Department and ABIA are not subject to governmental immunity because Plaintiff's claims fall under one of the exceptions, namely premises liability, for ABIA and the Austin Aviation Department's failure to provide the proper equipment for Plaintiff to access and board the Frontier flight.

7. Moreover, the City and the AFD are not subject to governmental immunity because Plaintiff's claims also fall under the exception for premises liability in that the City, through the Austin Fire Department, had actual notice of the lack of proper equipment and took negligent action for Plaintiff to access and board the aircraft.

8. Last, the City, the AFD, the Austin Aviation Department and ABIA are not subject to governmental immunity because Plaintiff's claims, if proven, establish gross negligence on the part of the City, the AFD, the Austin Aviation Department and ABIA.

## III.
## PARTIES

9. Plaintiff Maxine White is a resident of Travis County, Texas.

10. Frontier's principal place of business is Denver, Colorado.

11. Huntleigh has appeared in this action.

12. Third-party Defendant City of Austin, Texas has appeared and answered in this action.

13. The Austin Fire Department, The City of Austin Aviation Department and the Austin-Bergstrom International Airport have appeared and answered in this action.

## IV.
## PROCEDURAL BACKGROUND

14. Plaintiff's Complaint (ECF 1-2) is a personal injury case alleging that Plaintiff was injured while boarding a Frontier flight on June 10, 2015. Plaintiff alleges that on the day of the incident she was traveling from Austin, Texas to Denver, Colorado aboard a flight operated by Frontier. Plaintiff alleges that the boarding gate for the flight was not equipped with a handicap ramp for boarding, but rather passengers accessed and boarded the flight from the tarmac.

15. Plaintiff alleges that she suffered "severe physical injuries as well as mental and physical trauma." (ECF 1-2.)

16. Plaintiff further alleges that she is seeking "monetary relief over $200,000" as well as exemplary damages. (*Id.* at ¶5.)

17. Plaintiff further alleges that the handicap ramp was required to be available for boarding pursuant to the ADA, and alleges that, because it was not available, "Plaintiff was loaded into a 'rescue chair' and carried up the stairs despite expressing concern for her safety." (*Id.*, at ¶10.)

18. Plaintiff has set forth causes of action sounding in negligence, negligent training and supervision, vicarious liability, and infliction of bodily injury. (*Id.*, ¶¶14 – 32.)

19. Frontier's internal investigation revealed that other parties may have been aware of Plaintiff's incident at the time of her boarding. Specifically, Frontier has reason to believe the Austin Fire Department and Aviation Department may have had some knowledge or information regarding the incident.

20. Frontier removed the case to this Court on December 2, 2016. The initial scheduling conference was held on April 25, 2017. The Scheduling Order (ECF No. 10) provides that any additional parties must be added by July 21, 2017.

21. Frontier brought a third-party action by summons and complaint filed on July 21, 2017. The City filed its Answer on August 17, 2017. Huntleigh filed a motion to dismiss or, in the alternative, requested a more definite statement on August 25, 2017.

22. Undoubtedly, Huntleigh provided services to Frontier and Plaintiff on the day in question because Huntleigh invoiced Frontier for all of 2015 for payment for wheelchair services provided by Huntleigh to Frontier passengers that would have included Ms. White on the day of the incident.

## V.
## FACTUAL BACKGROUND GIVING RISE TO THE THIRD PARTY ACTION

23. Frontier operates commercial air service operations at ABIA pursuant to a contract with the City. Pursuant to the contract, attached hereto as Exhibit A, the City "acting by and through the Executive Director of the Department of Aviation," leases Gate 24 to Frontier for its flight operations.

24. Under the contract, the City must:

> operate, maintain, manage, and control the Airport in a first class, efficient, economical and businesslike manner, and in accordance with Applicable Law." "Applicable Law" is a defined term in the contract meaning: ". . . all federal, state and local laws, codes, ordinances, rules, regulations . . . of any Governmental Authority applicable to the parties, the Airport, or the Premises during the term of this Agreement.

25. The section entitled "Article 9 – Airline Alterations and Additions" on page 29 of the contract, drafted by the City, provides in Part B:

4

> B. **Modification Required to Accommodate Disabled Persons.** If Lessor is required by Applicable Law or an order of a Governmental Authority to modify the areas leased or occupied by Airline, or to install additional equipment therein, in order to accommodate Airline's disabled passengers during the term of this Agreement, Lessor shall give the Airline prompt notice of the receipt of such governmental order to undertake such modifications, or additions, in order that Airline may present its views, or objections, or participate in the planning of such, to the extent that its interest is involved. Then:
>
> (1) if the areas or equipment (including boarding assistance devices) are Exclusively or Preferentially leased to or used by Airline, the Rent paid by Airline for such areas or equipment shall be adjusted to include Lessor's cost to modify such areas or install additional equipment, amortized over a reasonable period of time in accordance with generally accepted accounting principles; and
>
> (2) if the areas or equipment are Common Use or Joint Use Facilities, the Rent paid by Airline and other users thereof shall be adjusted to include Lessor's cost to modify such areas or install additional equipment, amortized over a reasonable period of time in accordance with generally accepted accounting principles.
>
> (3) The Rent adjustment under this Article shall be effective as of the first day of the month following the completion of such modifications, or the installation of such equipment, as applicable.
>
> Unless otherwise specified in **Exhibit A**, each of Airline's Preferential Use Gates are equipped with passenger loading bridges. If Airline elects to operate any aircraft at the Airport which cannot be boarded using the loading bridges provided by Lessor, Airline shall be solely responsible to satisfy its obligations under the Air Carrier Access Act [49 U.S.C. 1374(c)] and the regulations promulgated thereunder (14 CFR §382.23) with respect to aircraft covered by 14 CFR Part 121.

26. Ms. White was a passenger of Frontier who was provided assistance by the City boarding an aircraft. The City owed a duty of care to Maxine White, including the duty to act with a degree of care for her safety and well-being that would be exercised by a reasonably cautious and prudent person under the same or similar circumstances.

27. Plaintiff alleges that she was injured during her transport between the airport terminal and the aircraft.

28. Frontier submitted a public information request to the City on April 17, 2017. The City responded on April 24, 2017 with an incident report and a letter to Plaintiff that had not been disclosed to Frontier prior to this date. (See attached the request and responses, attached hereto as and incorporated herein for all purposes, Exhibit B.)

29. The "Incident Detail Report" ("IDR") indicates that firemen from Austin Fire Rescue 2 and 5 "responded to Gate 1 as requested by a phone call from Frontier Airlines for assistance helping a

disabled passenger board the 737.  The aircraft was parked on the RON out from Gate 2 and with an airstair attached.  We used an aisle chair to take the patient up the stairs."

30.     Further, the IDR reads that the firemen, "provided manpower for a lift assist onto Frontier Airlines aircraft located at the hardstand using an aisle chair provided by Air Ops." *Id*.

31.     In addition to the IDR, the City also provided an "Email Response" to a "Citizen Assistance Form" ("CAF Response") dated July 20, 2015.  The CAF Response was addressed to Plaintiff's email address and was authored by Stephanie Tucker, Airport Property Manager for ABIA.  In relevant part, Ms. Tucker stated:

> . . .the Aviation Department has purchased an air stair with a wheelchair lift.  The air stair is designed to accommodate various aircraft classes that operate at the airport.  The lift will be used in anomalies and emergencies to ensure the safe loading and disembarkation of passengers from planes." *Id*.

32.     The City, its agents, servants and employees breached its duties to Frontier and Ms. White when they failed to safely transport Ms. White, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft safely.

33.     The City, its agents, servants and employees breached its duties to Frontier and Ms. White when they failed to provide the necessary required equipment to safely transport Ms. White, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft.

34.     The City, its agents, servants and employees breached its duties to Frontier and Ms. White when they failed to stop an improper transport of Ms. White, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft as required by their safety procedures and applicable law.

35.     The City, its agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their airport services and premises.

36.     The City's negligence was the direct and proximate cause of Ms. White's injuries.

37. The City's breach of contract is the direct and proximate cause of Ms. White's injuries.

38. With respect to Huntleigh, Frontier has located and produced all 2015 invoices between Huntleigh and Frontier that show a written agreement with Huntleigh to provide services for Frontier customers using wheelchairs at ABIA[1] including July 28, 2015 for Huntleigh's services dating from June 1, 2015 to June 30, 2015, which includes the date of plaintiff's alleged incident, as well as the rest of all the invoices for 2015. *See* Exhibit C.

39. The 2015 invoices establish a contractual relationship by which Huntleigh provided wheelchair services for at least eight airlines at ABIA for the month of June 2015, including Delta, Continental, JetBlue, Frontier, United, Mesa/USAir, USAir and PSA/USAir.

40. According to the June 2015 invoice, Huntleigh provided wheelchair services to 21,346 individual airport passengers among those eight airlines.

41. Frontier paid Huntleigh $5,811.86 for its share of wheelchair services for the convenience and safety of passengers for the month of June 2015. This fee included wheelchair agents, a management fee and a supervisor from Huntleigh. In exchange for this monthly fee, Huntleigh agreed to handle all wheelchair services for Frontier.

42. One of those passengers for whom Huntleigh provided wheelchair services was Plaintiff, a third-party beneficiary of the contract relationship between Frontier and Huntleigh.

43. Ms. White, a third-party beneficiary of the contract, was a passenger of Frontier who was provided wheelchair assistance by Huntleigh. Huntleigh, its agents, servants and employees owed a duty of care to Maxine White, including the duty to act with a degree of care for her safety and well-

---

[1] Frontier contracts with Huntleigh at other US Airports. The boilerplate contract language from a different airport where Huntleigh provides wheelchair services for Frontier as a "Handling Company," provides, with respect to Frontier, the "Carrier" to: "indemnify, defend and hold harmless Carrier, its directors, officers, employees, and agents from and against any and all claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses of any kind or nature whatsoever, including, but not limited to interest, court costs, and attorneys' fees, which in any way arise out of or result from any act(s) or omission(s) by Handling Company . . ."

being that would be exercised by a reasonably cautious and prudent person under the same or similar circumstances.

44. Plaintiff alleges that she was injured during her transport between the airport terminal and the aircraft.

45. Huntleigh, its agents, servants and employees breached its duties to Frontier and Ms. White when they failed to safely transport Ms. White, a third-party beneficiary of the contract and Huntleigh's services, from the airport terminal to the aircraft safely.

46. Huntleigh, its agents, servants and employees breached its duties to Frontier and Ms. White when they failed to provide the necessary required equipment to safely transport Ms. White, a third-party beneficiary of the contract and Huntleigh's services, from the airport terminal to the aircraft.

47. Huntleigh, its agents, servants and employees breached its duties to Frontier and Ms. White when they failed to stop an improper transport of Ms. White, a third-party beneficiary of the contract and Huntleigh's services, from the airport terminal to the aircraft as required by their safety procedures and applicable law.

48. Huntleigh, its agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their wheelchair services.

49. Huntleigh's negligence was the direct and proximate cause of Ms. White's injuries.

50. Huntleigh's breach of contract is the direct and proximate cause of Ms. White's injuries.

**VI.**
**FIRST CAUSE OF ACTION AGAINST CITY, AVIATION DEPARTMENT AND ABIA**
**(BREACH OF CONTRACT)**

51. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

52. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide the services pursuant to the contract.

### VII.
### SECOND CAUSE OF ACTION AGAINST CITY, AVIATION DEPARTMENT AND ABIA
### (CONTRACTUAL INDEMNIFICATION)

53. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

54. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide the services pursuant to the contract.

55. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and the City, the Aviation Department, and/or ABIA for the wrongful and/or negligent conduct of the City, by and through the Aviation Department and/or ABIA, Frontier is entitled to indemnification from the City, the Aviation Department, and/or ABIA for any such damages and all of its costs, including attorney's fees.

### VIII.
### THIRD CAUSE OF ACTION AGAINST CITY, AVIATION DEPARTMENT, ABIA, AND AFD
### (CONTRIBUTION)

56. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

57. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide the services pursuant to the contract.

58. In the event and to the extent that Frontier is adjudged to have any liability to Plaintiff with respect to any claims asserted in the Complaint, Frontier is entitled to contribution from the City, the

Aviation Department, and/or ABIA for such portion of the judgment, in whole or in part, that is attributable to their conduct.

## IX.
## FIRST CAUSE OF ACTION AGAINST HUNTLEIGH
## (BREACH OF CONTRACT)

59. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

60. Huntleigh breached its contract with Frontier by failing to provide the services pursuant to the contract.

61. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and Huntleigh by third-party defendant Huntleigh, Frontier is entitled to recover from Huntleigh any such damages and all of its costs, including attorney's fees.

## X.
## SECOND CAUSE OF ACTION AGAINST HUNTLEIGH
## (CONTRACTUAL INDEMNIFICATION)

62. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

63. Huntleigh breached its contract with Frontier by failing to provide the services pursuant to the contract.

64. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and Huntleigh or the wrongful and/or negligent

conduct of Huntleigh, Frontier is entitled to indemnification from Huntleigh for any such damages and all of its costs, including attorney's fees.

## XI.
## THIRD CAUSE OF ACTION AGAINST HUNTLEIGH
## (CONTRIBUTION)

65. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

66. Huntleigh breached its contract with Frontier by failing to provide the services pursuant to the contract.

67. In the event and to the extent that Frontier is adjudged to have any liability to Plaintiff with respect to any claims asserted in the Complaint, Frontier is entitled to contribution from Huntleigh, for such portion of the judgment, in whole or in part, that is attributable to Huntleigh's conduct.

WHEREFORE, Defendant/Third-Party Plaintiff Frontier Airlines, Inc., demands judgment on its claims against Third-Party Defendants City of Austin, the Austin Fire Department, the Austin Aviation Department, Austin-Bergstrom International Airport and Huntleigh Corporation; and requests such other relief as the Court deems just, proper and equitable.

DATED:  October 20, 2017                    Respectfully submitted,

                                                   By: */s/ Patrick J. Comerford*
                                                   Patrick J. Comerford, Esq.
                                                   State Bar No. 24096724

                                                   **SMITH ROBERTSON, LLP**
                                                   221 West 6th Street, Suite 1100
                                                   Austin, Texas 78701
                                                   p: (512)-225-5810
                                                   f: (512)-225-5838
                                                   pcomerford@smith-robertson.com

                                                   **ATTORNEY FOR DEFENDANT/THIRD-PARTY PLAINTIFF FRONTIER AIRLINES, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on October 20, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Joel A. Levine
Law Office of Joel A. Levine, PLLC
5407 Parkcrest Drive, Suite 300
Austin, Texas 78731
*joel@joelalevine.com*

George S. McCall
Matthew Clay Sapp
Drinker Biddle & Reath LLP
1717 Main St. - Ste 5400
Dallas, Texas 75201
*george.mccall@dbr.com*
*matt.sapp@dbr.com*

Joanna Lippman Salinas
Fletcher, Farley, Shipman & Salinas, L.L.P.
1717 W. 6th Street, Suite 300
Austin, Texas 78703
*Joanna.salinas@fletcherfarley.com*