IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MAXINE WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FRONTIER AIRLINES, INC., | § | |
| | § | |
| Defendant/Third Party Plaintiff, | § | CIVIL ACTION NO. 1:16-CV-1266(LY) |
| | § | |
| v. | § | JURY DEMAND |
| | § | |
| THE AUSTIN FIRE DEPARTMENT, | § | |
| THE CITY OF AUSTIN AVIATION | § | |
| DEPARTMENT, AUSTIN-BERGSTROM | § | |
| INTERNATIONAL AIRPORT, | § | |
| THE CITY OF AUSTIN AND | § | |
| HUNTLEIGH USA CORPORATION, | § | |
| | § | |
| Third-Party Defendants. | § | |

**DEFENDANT/THIRD-PARTY PLAINTIFF FRONTIER AIRLINES, INC.'S
SECOND AMENDED THIRD-PARTY COMPLAINT**

Defendant/Third-Party Plaintiff, Frontier Airlines, Inc. ("Frontier"), pursuant to Rule 14 of the Federal Rules of Civil Procedure, files this Second Amended Third-Party Complaint (the "Complaint") against the Austin Fire Department ("AFD"), the City of Austin Aviation Department (the "Aviation Department"), the Austin-Bergstrom International Airport ("ABIA"), the City of Austin ("City") and Huntleigh USA Corporation ("Huntleigh"), and would respectfully show the Court as follows:

**I.
JURISDICTION AND VENUE**

1. This Court has jurisdiction over the dispute between Plaintiff Maxine White and Frontier.

2. This Complaint asserts that Third-Party Defendants, the AFD, the Aviation Department, ABIA, the City and Huntleigh, are liable to Frontier for the liability, if any, Frontier may owe to Plaintiff. The claims asserted in this Complaint arise out of the same facts and circumstances as those of the

original complaint (ECF No.1-2) filed by Plaintiff ("Plaintiff's Complaint"), so that this Court may exercise supplemental jurisdiction over this third-party action under 28 U.S.C. §1367(a).

3. Plaintiff alleges violation of the Americans with Disability Act ("ADA"). Therefore, this Court has jurisdiction over the federal question raised by Plaintiff's Complaint as well.

4. Venue is proper in this Court, pursuant to 28 U.S.C. §1391, in that the events giving rise to this lawsuit occurred in this judicial district.

## II.
## FRONTIER'S CLAIMS ARE NOT BARRED BY IMMUNITY

5. The City, the Aviation Department and ABIA are not subject to governmental immunity because they performed certain proprietary acts that form the basis of this suit.

6. In addition, the City, the Aviation Department and ABIA are not subject to governmental immunity because Plaintiff's claims fall under one of the exceptions, namely premises liability, for ABIA and the Aviation Department's failure to provide the proper equipment for Plaintiff to access and board the Frontier flight.

7. Moreover, the City and the AFD are not subject to governmental immunity because Plaintiff's claims also fall under the exception for premises liability in that the City, through the AFD, had actual notice of the lack of proper equipment and took negligent action for Plaintiff to access and board the aircraft.

8. Last, the City, the AFD, the Aviation Department and ABIA are not subject to governmental immunity because Plaintiff's claims, if proven, establish gross negligence on the part of the City, the AFD, the Aviation Department and ABIA.

## III.
## PARTIES

9. Plaintiff Maxine White is a resident of Travis County, Texas.

10. Frontier is an airline carrier doing business in Austin, Texas.

11. Huntleigh has appeared in this action.

12. The City, the AFD, the Aviation Department and ABIA have appeared and answered in this action.

## IV.
## PROCEDURAL BACKGROUND

13. Plaintiff's Complaint (ECF Nos. 1-2.) is a personal injury case alleging that Plaintiff was injured while boarding a Frontier flight on June 10, 2015. Plaintiff alleges that on the day of the incident she was traveling from Austin, Texas to Denver, Colorado aboard a flight operated by Frontier. Plaintiff alleges that the boarding gate for the flight was not equipped with a handicap ramp for boarding, but rather passengers accessed and boarded the flight from the tarmac via stairs.

14. Plaintiff alleges that she suffered "severe physical injuries as well as mental and physical trauma" due to the manner in which she was boarded onto the plane. (ECF Nos. 1-2.)

15. Plaintiff alleges that she is seeking "monetary relief over $200,000" as well as exemplary damages. (*Id.*, at ¶5.)

16. Plaintiff further alleges that a wheelchair-accessible ramp was required to be available for boarding pursuant to the ADA, and alleges that, because it was not available, "Plaintiff was loaded into a 'rescue chair' and carried up the stairs despite expressing concern for her safety." (*Id.*, at ¶10.)

17. Plaintiff has set forth causes of action sounding in negligence, negligent training and supervision, vicarious liability, and infliction of bodily injury. (*Id.*, ¶¶14 – 32.)

18. Frontier removed the case to this Court on December 2, 2016. The initial scheduling conference was held on April 25, 2017. The Scheduling Order (ECF No. 10.) provides that any additional parties must be added by July 21, 2017.

19. Plaintiff amended her complaint on July 21, 2017, adding claims alleging that Frontier violated 14 CFR 382, The Air Carrier Access Act ("ACAA"), and Chapter 121 of the Texas Human Rights Code.

20. Frontier brought a third-party action by summons and complaint filed on July 21, 2017. The City filed its answer on August 17, 2017. Huntleigh filed a motion to dismiss or, in the alternative, requested a more definite statement on August 25, 2017.

21. Frontier amended its original third-party complaint on October 20, 2017. Huntleigh filed a second motion to dismiss Frontier's First Amended Third-Party Complaint on November 1, 2017.

## V.
## FACTUAL BACKGROUND GIVING RISE TO THE THIRD PARTY ACTION

### The City of Austin

22. Frontier operates commercial air service operations at ABIA pursuant to a contract with the City. Pursuant to the contract, attached hereto as Exhibit A, the City "acting by and through the Executive Director of the Department of Aviation," leases Gate 24 to Frontier for its flight operations.

23. Under the contract, the City must:

> operate, maintain, manage, and control the Airport in a first class, efficient, economical and businesslike manner, and in accordance with "Applicable Law." "Applicable Law" is a defined term in the contract meaning: . . . all federal, state and local laws, codes, ordinances, rules, regulations . . . of any Governmental Authority applicable to the parties, the Airport, or the Premises during the term of this Agreement.

24. Article 9 of the contract entitled "Airline Alterations and Additions," drafted by the City, provides in Part B:

> B. **Modification Required to Accommodate Disabled Persons.** If Lessor is required by Applicable Law or an order of a Governmental Authority to modify the areas leased or occupied by Airline, or to install additional equipment therein, in order to accommodate Airline's disabled passengers during the term of this Agreement, Lessor shall give the Airline prompt notice of the receipt of such governmental order to undertake such modifications, or additions, in order that Airline may present its views, or objections, or participate in the planning of such, to the extent that its interest is involved. Then:
>
> (1) if the areas or equipment (including boarding assistance devices) are Exclusively or Preferentially leased to or used by Airline, the Rent paid by Airline for such areas or equipment shall be adjusted to include Lessor's cost to modify such areas or install additional equipment, amortized over a reasonable period of time in accordance with generally accepted accounting principles; and
>
> (2) if the areas or equipment are Common Use or Joint Use Facilities, the Rent paid by Airline and other users thereof shall be adjusted to include Lessor's cost to modify such areas or install additional equipment, amortized over a reasonable period of time in accordance with generally accepted accounting principles.
>
> (3) The Rent adjustment under this Article shall be effective as of the first day of the month following the completion of such modifications, or the installation of such equipment, as applicable.
>
> Unless otherwise specified in **Exhibit A**, each of Airline's Preferential Use Gates are equipped with passenger loading bridges. If Airline elects to operate any aircraft at the Airport which cannot be boarded using the loading bridges provided by Lessor, Airline shall be solely responsible to satisfy its obligations under the Air Carrier Access Act [49 U.S.C, 1374(c)] and the regulations promulgated thereunder (14 CFR §382.23) with respect to aircraft covered by 14 CFR Part 121.

(*See* Exhibit A at p. 29.)

25.     Plaintiff was a customer of Frontier who was provided assistance by the City boarding a Frontier aircraft. As such, the City owed a duty of care to Plaintiff, including the duty to act with the same degree of care for Plaintiff's safety and well-being that would be exercised by a reasonably cautious and prudent person under the same or similar circumstances.

26.     Plaintiff alleges that she was injured during her transport between the airport terminal and the aircraft.

27.     Frontier submitted a public information request to the City on April 17, 2017. The City responded on April 24, 2017 with an incident report and a letter to Plaintiff that had not been disclosed to Frontier prior to that date. (*See* Exhibit B.)

28. The "Incident Detail Report" (the "IDR") indicates that firemen from Austin Fire Rescue 2 and 5:

> [R]esponded to Gate 1 as requested by a phone call from Frontier Airlines for assistance helping a disabled passenger board the 737. The aircraft was parked on the RON out from Gate 2 and with an air-stair attached. We used an aisle chair to take the patient up the stairs. (*See* Exhibit B at p. 5.)

29. Further, the IDR reads that the firemen, "provided manpower for a lift assist onto Frontier Airlines aircraft located at the hardstand using an aisle chair provided by Air Ops." (*Id.*)

30. In addition to the IDR, the City also provided an email response to a "Citizen Assistance Form" dated July 20, 2015 (the "CAF Response"). The CAF Response was addressed to Plaintiff's email address and was authored by Stephanie Tucker, Airport Property Manager for ABIA. In relevant part, Ms. Tucker stated:

> . . .the Aviation Department has purchased an air stair with a wheelchair lift. The air stair is designed to accommodate various aircraft classes that operate at the airport. The lift will be used in anomalies and emergencies to ensure the safe loading and disembarkation of passengers from planes. (*Id.*)

31. The City, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to safely transport Plaintiff, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft safely.

32. The City, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to provide the necessary required equipment to safely transport Plaintiff, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft.

33. The City, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to stop an improper transport of Plaintiff, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft as required by their safety procedures and

applicable law.

34. The City, its agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their airport services and premises.

35. The City's negligence was the direct and proximate cause of Plaintiff's injuries.

36. The City's breach of contract is the direct and proximate cause of Plaintiff's injuries.

## Huntleigh Corporation

37. Frontier had a contract with Huntleigh to provide wheelchair services for its customers on the day of the incident.[1]

38. Frontier has been unable to locate a copy of that contract.

39. Indeed, Huntleigh executed a renewal of their contract with Frontier at ABIA as of September 29, 2017. (*See* Exhibit D at Attachment 1.) Frontier's current contract with Huntleigh at ABIA tracks the same boilerplate indemnification and services provisions as its contracts with Huntleigh and other independently contracted service providers at other airports.[2]

40. Huntleigh is, and was on the date of the alleged incident, a "contractor" as defined in the ACAA at 14 CFR 382.7.

41. All wheelchair services provided by Huntleigh are provided pursuant to the ACAA.

---

[1] Frontier hires contractors to provide wheelchair services for its customers at all airports to which it flies, including ABIA. Frontier does not provide any wheelchair services through its own personnel, and in fact, does not employ any full-time Frontier personnel at ABIA at any time, including on the day of the incident. Frontier personnel were not directly involved with the interactions with Plaintiff on the day of the alleged incident.

[2] Frontier contracts with Huntleigh at other US Airports. The boilerplate contract language from a different airport where Huntleigh provides wheelchair services for Frontier as a "Handling Company," provides, with respect to Frontier, the "Carrier" to: "indemnify, defend and hold harmless Carrier, its directors, officers, employees, and agents from and against any and all claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses of any kind or nature whatsoever, including, but not limited to interest, court costs, and attorneys' fees, which in any way arise out of or result from any act(s) or omission(s) by Handling Company or anyone for whose acts Handling Company may be liable in the performance or non-performance of services under this [Contract], including, but not limited to: death of or injury to any person or persons. . ." *See* Exhibit D at Attachment 2.

42. Huntleigh was responsible for providing boarding assistance to Frontier passengers compliant with ACAA requirements set forth in Chapter 5, "Assisting Air Travelers with Disabilities Boarding, Deplaning and During the Flight."

43. Pursuant to ACAA Chapter 5, Huntleigh had a duty to provide trained personnel with a "proficiency in the use of the boarding assistance equipment and procedures regarding the safety and dignity of passengers receiving boarding assistance."

44. Frontier has located and produced all 2015 invoices delivered by Huntleigh to Frontier that show a written agreement between Huntleigh and Frontier whereby Huntleigh was to provide services for Frontier customers using wheelchairs at ABIA, including invoices for Huntleigh's services dating from June 1, 2015 to June 30, 2015 which cover the date of Plaintiff's alleged incident. *See* Exhibit C.

45. The 2015 invoices establish a contractual relationship by which Huntleigh provided wheelchair services for at least eight airlines at ABIA for the month of June 2015, including Delta, Continental, JetBlue, Frontier, United, Mesa/USAir, USAir and PSA/USAir.[3]

46. According to the June 2015 invoice, Huntleigh provided wheelchair services to 21,346 individual airport passengers among those eight airlines.

47. Frontier paid Huntleigh $5,811.86 for its share of wheelchair services for the convenience and safety of passengers for the month of June 2015. In exchange for this monthly fee, Huntleigh agreed to handle all wheelchair services for Frontier, which services include wheelchair agents, management, and a supervisor provided by Huntleigh.

---

[3] Upon information and belief, review of Huntleigh's contracts with these other air carriers will establish similar, if not identical, performance and indemnification clauses.

48. Based on the dates of Huntleigh's invoices, one of the passengers for whom Huntleigh provided, or should have provided, wheelchair services was Plaintiff, a third-party beneficiary of the contractual relationship between Frontier and Huntleigh.

49. Huntleigh, as the only wheelchair provider for Frontier at ABIA, would have been made aware of Plaintiff's request for wheelchair services on or prior to the day of the alleged incident.[4]

50. Plaintiff alleges that she was injured during her transport between the airport terminal and the aircraft.

51. Huntleigh's standard service contract provides that wheelchair services must comply with industry standards and all Federal, State, local and airport rules and regulations in accordance with the requirements set forth in 14 CFR 382, which include, without limitation, providing special equipment and specially trained personnel for assistance to persons with reduced mobility.

52. Huntleigh was responsible under its contract with Frontier for ensuring Plaintiff's safe transportation from the terminal to the plane, including obtaining Plaintiff's consent to the method of such transportation.

53. According to the ACAA, without Plaintiff's consent, Huntleigh was required to notify Frontier's appointed and trained Complaint Resolution Officer, and then provide instructions on what procedures must be followed.

54. If Huntleigh did not provide wheelchair services to Plaintiff from the terminal to the plane on the day of the alleged incident, then Huntleigh's omission would have been in breach of its agreement (express or implied) with Frontier for Huntleigh to provide such services for which Frontier paid Huntleigh. It was Huntleigh's responsibility to provide wheelchair services to Plaintiff on Frontier's behalf as Frontier's engaged third party vendor. Any failure by Huntleigh to provide wheelchair services

---

[4] Attached hereto and incorporated herein for all purposes as <u>Exhibit D</u> is the Affidavit of Frontier's Manager of Ground Handling Contracts, which details the relationship between Huntleigh and Frontier.

to Plaintiff (as Frontier's customer) is in breach of that responsibility. Allowing an improperly trained third party (public servant or otherwise) to provide wheelchair services to a Frontier customer is a further breach of that responsibility.

55. Huntleigh, its agents, servants and employees owed a duty of care to Plaintiff, including the duty to act with the same degree of care for her safety and well-being that would be exercised by a reasonably cautious and prudent person under the same or similar circumstances.

56. Huntleigh, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to safely transport Plaintiff, a third-party beneficiary of the contract and Huntleigh's services, from the airport terminal to the aircraft safely.

57. Huntleigh, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to provide or arrange for the necessary required equipment to safely transport Plaintiff, a third-party beneficiary of the contract and Huntleigh's services, from the airport terminal to the aircraft.

58. Huntleigh, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to stop an improper transport of Plaintiff, a third-party beneficiary of the contract and Huntleigh's services, from the airport terminal to the aircraft as required by their safety procedures and applicable law.

59. Huntleigh, its agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their wheelchair services.

60. Huntleigh's negligence was the direct and proximate cause of Plaintiff's injuries.

61. Huntleigh's breach of contract is the direct and proximate cause of Plaintiff's injuries.

## VI.
## FIRST CAUSE OF ACTION AGAINST CITY, AVIATION DEPARTMENT AND ABIA
## (BREACH OF CONTRACT)

62. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

63. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide the services pursuant to the contract.

## VII.
## SECOND CAUSE OF ACTION AGAINST CITY, AVIATION DEPARTMENT AND ABIA
## (CONTRACTUAL INDEMNIFICATION)

64. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

65. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide the services pursuant to the contract.

66. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and the City, the Aviation Department, and/or ABIA for the wrongful and/or negligent conduct of the City, by and through the Aviation Department and/or ABIA, Frontier is entitled to indemnification from the City, the Aviation Department, and/or ABIA for any such damages and all of its costs, including attorney's fees.

## VIII.
## THIRD CAUSE OF ACTION AGAINST CITY, AVIATION DEPARTMENT, ABIA, AND AFD
## (NEGLIGENCE)

67. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

68. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, the City, by and through the Aviation Department, ABIA, and their respective agents, servants and employees, acted negligently in the operation, maintenance, control, care and supervision of airport services and premises by failing to provide the proper equipment to transport Plaintiff.

69. The City, by and through the AFD, failed to exercise due care in transporting Plaintiff on the date of the alleged incident.

70. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, The City, Aviation Department, ABIA and AFD's agents, servants and employees acted negligently in their control and care of Plaintiff while transporting Plaintiff on the date of the alleged incident.

71. The City's conduct, by and through the negligent actions of the agents, servants and employees of the Aviation Department, ABIA, and the AFD, was the direct and proximate cause of Plaintiff's injuries.

## IX.
## FOURTH CAUSE OF ACTION AGAINST CITY, AVIATION DEPARTMENT, ABIA, AND AFD
## (CONTRIBUTION)

72. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

73. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide services pursuant to the contract.

74. The AFD's agents, servants and employees breached their duty of control and care while transporting Plaintiff on the date of the alleged incident.

75. In the event and to the extent that Frontier is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, Frontier is entitled to contribution from the City, the Aviation Department, ABIA and/or AFD for such portion of the judgment, in whole or in part, that is attributable to their conduct.

## X.
## FIRST CAUSE OF ACTION AGAINST HUNTLEIGH
## (BREACH OF CONTRACT)

76. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

77. Huntleigh breached its contract with Frontier by failing to provide services pursuant to the contract.

78. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and Huntleigh by third-party defendant Huntleigh, Frontier is entitled to recover from Huntleigh any such damages and all of its costs, including attorney's fees.

## XI.
## SECOND CAUSE OF ACTION AGAINST HUNTLEIGH
## (CONTRACTUAL INDEMNIFICATION)

79. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

80. Huntleigh breached its contract with Frontier by failing to provide services pursuant to the contract.

81. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and Huntleigh or the wrongful and/or negligent conduct of Huntleigh, Frontier is entitled to indemnification from Huntleigh for any such damages and all of its costs, including attorney's fees.

## XII.
## THIRD CAUSE OF ACTION AGAINST HUNTLEIGH
## (NEGLIGENCE)

82. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

83. Huntleigh was obligated to exercise due care in providing the wheelchair services pursuant to its contract with Frontier.

84. Huntleigh was obligated to provide wheelchair services pursuant to the requirements of ACAA.

85. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, Huntleigh's agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their wheelchair services and personnel.

86. Huntleigh's conduct was the direct and proximate cause of Plaintiff's injuries.

## XIII.
## FOURTH CAUSE OF ACTION AGAINST HUNTLEIGH
## (CONTRIBUTION)

87. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

88. Huntleigh breached its contract with Frontier by failing to provide services pursuant to the contract. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, Huntleigh's agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their wheelchair services and personnel.

89. In the event and to the extent that Frontier is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, Frontier is entitled to contribution from Huntleigh, for such portion of the judgment, in whole or in part, that is attributable to Huntleigh's conduct.

WHEREFORE, Defendant/Third-Party Plaintiff Frontier Airlines, Inc., demands judgment on its claims against Third-Party Defendants City of Austin, the Austin Fire Department, the Austin Aviation Department, Austin-Bergstrom International Airport and Huntleigh USA Corporation; and requests such other relief as the Court deems just, proper and equitable.

DATED:  November 29, 2017

    Respectfully submitted,

    By: ___/s/ Patrick J. Comerford_____
        Patrick J. Comerford, Esq.
        State Bar No. 24096724

    **SMITH ROBERTSON, LLP**
    221 West 6th Street, Suite 1100
    Austin, Texas 78701
    p: (512)-225-5810
    f: (512)-225-5838
    pcomerford@smith-robertson.com

    **ATTORNEY FOR DEFENDANT/THIRD-PARTY PLAINTIFF FRONTIER AIRLINES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Joel A. Levine
Law Offices of Joel A. Levine, PLLC
5407 Parkcrest Drive, Suite 300
Austin, Texas  78731
*joel@joelalevine.com*

George S. McCall
Matthew Clay Sapp
Drinker Biddle & Reath LLP
1717 Main Street, Suite 5400
Dallas, Texas  75201-7367
george.mccall@dbr.com
*matt.sapp@dbr.com*

Joanna Lippmann Salinas
Fletcher, Farley, Shipman & Salinas, L.L.P.
1717 West 6th Street, Suite 300
Austin, Texas  78703
Joanna L. Salinas, Esq.
*joanna.salinas@fletcherfarley.com*