**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| MAXINE WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FRONTIER AIRLINES, INC., | § | |
| | § | CASE NO.  1:16-CV-1266(LY) |
| Defendant and Third-Party Plaintiff, | § | |
| | § | JURY DEMAND |
| v. | § | |
| | § | |
| THE AUSTIN FIRE DEPARTMENT, | § | |
| THE CITY OF AUSTIN AVIATION | § | |
| DEPARTMENT, AUSTIN-BERGSTROM | § | |
| INTERNATIONAL AIRPORT, THE CITY | § | |
| OF AUSTIN AND HUNTLEIGH USA | § | |
| CORPORATION, | § | |
| | § | |
| Third-Party Defendants. | § | |

---

**FRONTIER'S RESPONSE IN OPPOSITION TO HUNTLEIGH'S MOTION TO DISMISS
FRONTIER'S FIRST AMENDED THIRD-PARTY COMPLAINT**

---

Defendant and Third-Party Plaintiff Frontier Airlines, Inc. ("Frontier") files this Response to Third-Party Defendant Huntleigh's Motion to Dismiss Frontier's First Amended Third-Party Complaint (the "Motion") filed under Federal Rule of Civil Procedure 12(b)(6) in the above-entitled and numbered cause, and in support hereof respectfully states as follows:

**I.  FRONTIER HAS SUFFICIENTLY PLED EACH OF ITS CLAIMS FOR RELIEF IN ITS FIRST AMENDED THIRD-PARTY COMPLAINT.**

1.      As this Court knows, as a threshold matter, a motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chemical Sales, Inc.*

*v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Frontier acknowledges that the standard for a sufficient complaint is properly set forth in the Motion. (ECF No. 33, at p. 2).

2.      However, in its Motion, Huntleigh seeks to impose a heightened sufficiency standard, ignoring the precedent established in *Iqbal*, *Twombly* and their progeny, wielding it as a sword to cut off a legitimate claim, rather than as a shield from frivolous, speculative lawsuits (as those cases intended). Huntleigh's overreaching seems to suggest that the pleading requirements would be such that Frontier must both articulate all relevant facts and evidence and try its entire case at the time of filing its Third-Party Complaint—implying that it is necessary for Frontier to plead evidence—which is simply not the standard. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Frito-Lay, Inc. v. WAPCO Constructors, Inc.*, 520 F.Supp. 186, 189 (M.D.La. 1981).

3.      In considering a motion to dismiss under Rule 12(b)(6), this Court must "liberally construe" the allegations in the complaint "in favor of the [complainant], and all facts pleaded in the complaint must be taken as true." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Frontier maintains that it has averred sufficient factual allegations in its Third-Party Complaint that, when taken as true, support the required elements of its particular legal theories and "raise a reasonable expectation that discovery will reveal evidence" on the necessary element. *Twombly*, 550 U.S. at 545.

## II. FRONTIER HAS ALLEGED SUFFICIENT FACTS TO SUPPORT A BREACH OF CONTRACT CLAIM AGAINST HUNTLEIGH.

4.      **FRONTIER HAS PLED THE EXISTENCE OF A VALID CONTRACT.** In its Motion, Huntleigh does not deny a valid contract exists between Frontier and Huntleigh, but, rather, that Frontier has not presented adequate *evidence* that a contract exists – improperly elevating the

threshold for a sufficient pleading. *Hankston v. Equitable Ascent Financial*, 382 S.W.3d 631, 635 (Tex. App.—Beaumont 2012, no pet.) (stating "while it is not necessary to attach a written contract, a petition asserting a breach of an express contract should at least contain allegations of the material provisions of the contract"); *Chuck Wagon Feeding Co., Inc. v. Davis*, 768 S.W.2d 360, 363 (Tex. App.—El Paso 1989, writ denied) (establishing that a contract action is sufficiently plead if the plaintiff "alleges rights or obligations arising out of the contract and a legal conclusion that defendant contracted to do or to refrain from doing a given act"). Accordingly, for purposes of giving Huntleigh "fair notice" of Frontier's claim and "the grounds upon which it rests," Frontier has sufficiently alleged that Frontier had "a written agreement with Huntleigh to provide services for and supervision of Frontier customers using wheelchairs at ABIA." (ECF No. 32 at ¶ 38 and ¶ 42.); *Twombly*, 550 U.S. at 545 (2007). [1]

5.    **FRONTIER HAS PLED PERFORMANCE TENDERED BY FRONTIER.** Huntleigh admits in its Motion that Frontier performed under the contract when "Frontier paid Huntleigh $5,811.86 for its share of wheelchair services for the convenience and safety of passengers for the month of June 2015," which is the month in which Plaintiff's alleged incident occurred. (ECF No. 32 at ¶ 41.)

6.    **FRONTIER HAS PLED BREACH OF CONTRACT BY HUNTLEIGH.** Huntleigh argues that Frontier failed to point to any alleged term of the contract that Huntleigh breached and, therefore, failed to state a claim for breach of a written contract against Huntleigh. (ECF No. 33, at p. 3.) In response, Frontier would specifically point to its allegations that: (i) Frontier tendered

---

[1] Frontier has filed, prior to the date of filing this Response, a Second Amended Third-Party Complaint (ECF No. 39) offering additional facts with regard to the contract which have come to light since the filing of Huntleigh's Motion to Dismiss. In addition, as Frontier alleges in its First Amended Third-Party Complaint, Frontier is one of several airlines to contract with Huntleigh. Discovery of such other agreements would be strong evidence of the custom and practice of Huntleigh, especially if such other agreements are similar or identical to the contract between Huntleigh and Frontier. And, of course, Huntleigh does not deny that it provides such services to Frontier at ABIA and numerous other locations.

payment to Huntleigh for the performance of wheelchair services for the month of June 2015; (ii) Plaintiff, a "Frontier passenger who was provided wheelchair assistance by Huntleigh" during June 2015, was a "third-party beneficiary of the contract" between Huntleigh and Frontier, and as such, "Huntleigh, its agents, servants and employees owed a duty of care to [Plaintiff]" according to the terms of the contract; and (iii) because "Plaintiff alleges that she was injured during her transport" to Frontier's aircraft, "Huntleigh, its agents, servants and employees breached its duties to Frontier and [Plaintiff] when they failed to safely transport [Plaintiff]" and/or "failed to provide the necessary required equipment to safely transport [Plaintiff]" and/or "failed to stop an improper transport of [Plaintiff], a third-party beneficiary of the contract and Huntleigh's services... to the aircraft." (ECF No. 32 at ¶ 41-47.)

7.     Moreover, under its contract with Frontier, Huntleigh was required to perform wheelchair services which comport with industry standards and all Federal, State, local and airport rules and regulations in accordance with the criterion set forth in 14 CFR 382, which includes, without limitation, providing special equipment and specially trained personnel for assistance to persons with reduced mobility.[2] Huntleigh's failure to provide the required equipment and personnel for the transportation of Plaintiff in compliance with 14 CFR 382 is more than an adequate allegation of a breach of contract by Huntleigh.

8.     Frontier's allegations, above, as restated from its First Amended Third-Party Complaint, plainly refute Huntleigh's claims that: (i) "there are no factual allegations about any acts or omissions made by Huntleigh in transporting [Plaintiff] on the day of the incident at issue;" (ii) "there are no allegations that any Huntleigh employee was even present when the

---

[2] Frontier asks this Court to take judicial notice of Huntleigh's own website that identifies its personnel training comports and complies with 14 CFR 382. (http://www.huntleighusa.com/aviationrelatedservices.html.)

AFD performed its task;" and (iii) there are no allegations "that a Huntleigh employee would have had the duty or the authority to direct or supervise the work of the [AFD]." (ECF No. 33, p. 4-5.)[3]

9.   Huntleigh cites *Texas Home Management, Inc. v. Peavy* as an excuse for the failure of its obligations under the wheelchair services contract with Frontier, stating it had "no duty to control the conduct of the [AFD]." (ECF No. 33, p. 5 (quoting 89 S.W.3d 30, 33 (Tex. 2002)). However, as Huntleigh acknowledges in its Motion, Texas courts recognize exceptions to the general "duty to control" rule based on certain special relationships, including relationships which arise from contracts. In fact, the Texas Supreme Court's holding in *Texas Home Management* supports Frontier's allegation that Huntleigh had a duty to stop an improper transport of Plaintiff.[4]

10.   **FRONTIER HAS PLED DAMAGES.** Huntleigh argues that Frontier fails to identify any damages sustained as a result of Huntleigh's breach because Frontier bases its claim on multiple conditions precedent (namely, its liability based on Plaintiff's claim). (ECF No. 33 at p. 5.) However, as stated in *Smith Int'l Inc., v. Egle Grp., LLC*, the case which Huntleigh cites to itemize the elements for a breach of contract claim, "a breach of contract claim is governed by the legal injury rule," which provides that "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of the injury is not discovered until later, and *even if all*

---

[3] Regardless, any argument made by Huntleigh that the AFD's and/or ABIA's participation (sole, joint, or otherwise) in the handling of Plaintiff during the alleged incident negates Huntleigh's liability is unfounded, as Frontier alleged that Huntleigh is liable for Plaintiff's injuries for failure to stop an improper transport of Plaintiff. (ECF No. 32, ¶ 47.)

[4] In that case, the court held that the defendant had an inherent right to control which arose from a contract incorporating applicable state and federal regulations and standards because the defendant voluntarily contracted to follow such standards. As a result, the defendant was considered to have a "right to control" the plaintiff, and therefore, a special relationship existed. *Texas Home Management*, 89 S.W.3d at 36. Similarly, in the present case, Huntleigh voluntarily contracted with Frontier to provide wheelchair services that comply with industry standards, including but not limited to 14 CFR 382. The parallels between the facts of *Texas Home Management* and the facts at issue could reasonably lead this Court to conclude that Huntleigh did, in fact, have a duty to control the AFD's and/or ABIA's actions with respect to the transport of Plaintiff during the alleged incident.

*resulting damages have not yet occurred.*" 490 F.3d 380, 387 (5th Cir. 2007) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (emphasis added). Thus, Huntleigh's argument fails, as Frontier sufficiently alleged that its damages are those for which it may be "found liable... to Plaintiff in connection with the claims asserted in Plaintiff's Complaint... as a result of a breach of the contractual relationship between Frontier and Huntleigh" plus "costs, including attorney's fees." (ECF No. 32, at ¶ 61.)

III.   **FRONTIER HAS ALLEGED SUFFICIENT FACTS TO SUPPORT A CONTRACTUAL INDEMNITY CLAIM AGAINST HUNTLEIGH.**

11.   **A CONTRACTUAL INDEMNITY AGREEMENT EXISTS.** Huntleigh argues that Frontier fails to allege that a contractual indemnity agreement exists between Huntleigh and Frontier. In response, Frontier reframes (from is First Amended Third-Party Complaint) that under its "written agreement with Huntleigh to provide services for Frontier customers using wheelchairs at ABIA," Huntleigh is required to "indemnify, defend and hold harmless [Frontier], its directors, officers, employees, and agents from and against any and all claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses of any kind or nature whatsoever, including, but not limited to interest, court costs, and attorneys' fees, which in any way arise out of or result from any act(s) or omission(s) by [Huntleigh]." (ECF No. 32 at ¶ 38 and n. 1.)

12.   **THE INDEMNITY AGREEMENT IS SUFFICIENT.** As is set forth in the First Amended Third-Party Complaint, Frontier realleges that because a claim arose out of Huntleigh's breach of its contract with Frontier for failure "to provide the services pursuant to the contract," under the terms of the contract's indemnification provisions, Huntleigh must "indemnify, defend and hold harmless [Frontier], its directors, officers, employees, and agents from and against any and

all claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses of any kind or nature whatsoever, including, but not limited to interest, court costs, and attorneys' fees" related to such claim. (ECF No. 32 at ¶¶ 38, 63 and n. 1.)

13.    Huntleigh argues that "the alleged language of the indemnity provision" in the contract "is insufficient to support Frontier's contractual indemnity claim" because "[Plaintiff's] petition alleges negligence by Frontier and its employees" rather than "any negligence on the part of Huntleigh." (ECF No. 33 at n. 1.) This argument is a fallacy, essentially reasoning that because Plaintiff mistakenly attributed Huntleigh's negligence to Frontier in its original petition, Huntleigh's act or omission giving rise to the claim could not have occurred. If such an argument were successful, additional parties would never be subjected to third party practice.

14.    **CLAIMS WERE MADE.** Huntleigh next argues that Frontier fails to allege that claims subject to an indemnity agreement have been made. In response, Frontier's First Amended Third-Party Complaint clearly alleges "the claims asserted in Plaintiff's complaint" are subject to the indemnification agreement, which requires Huntleigh to "indemnify, defend and hold harmless [Frontier], its directors, officers, employees, and agents from and against any and all claims...aris[ing] out of or result[ing] from any act(s) or omission(s) by [Huntleigh]." (ECF No. 32 at ¶¶ 38, 64 and n. 1.)

15.    **ALL CONDITIONS PRECEDENTS HAVE BEEN SATISFIED.** Huntleigh argues that Frontier fails to allege facts sufficient to show that all conditions precedent to recovery have occurred or been waived or excused, but neglects to identify what conditions precedent would prevent Frontier from maintaining its indemnity claim. *See Transamerica Ins. Co. v. Avenell*, 66 F. 3d 715, 720 (5th Cir. 1995) (noting that the indemnifying party did not identify or offer any

evidence of conditions precedent to preclude the indemnified party from asserting its indemnification claim).

**IV. FRONTIER HAS ALLEGED SUFFICIENT FACTS TO SUPPORT A COMMON LAW INDEMNITY CLAIM AGAINST HUNTLEIGH.**

16.     Huntleigh addresses common law indemnity in its Motion, citing case law to support its argument that Huntleigh is not liable for Plaintiff's alleged injury because a contractual relationship does not give rise to vicarious liability. Such argument is inapplicable to Frontier's contractual indemnity claim. As provided in Huntleigh's Motion and acknowledged by Frontier herein, the elements of a contractual indemnity claim do not include vicarious liability.

17.     Even so, Huntleigh's argument that "[Plaintiff's] vicarious liability claims against Frontier... have no bearing on Huntleigh" is inconsistent with relevant case law.  Huntleigh cites *LTV Energy Prod. Co. v. Chaparral Inspection Co.* in support of its argument, but *LTV Energy* and cases with analogous findings are distinguishable from the facts in the case at bar. 827 S.W.2d 593, 595 (Tex. App.—Houston [1st Dist.] 1992, pet. denied).

18.     The *LTV Energy* court held that there was no implied obligation of indemnity between the parties because they had "no contractual business dealings—in fact, no direct business dealings whatsoever." 827 S.W.2d at 595.  Huntleigh manipulates that court's reference to the seminal case *American Alloy* ("the mere fact of a contractual relationship between the parties was not held to give rise to an obligation of implied indemnity") which, when correctly interpreted, means that a contractual relationship *alone* does not give rise to an obligation of implied indemnity. *Id.* (paraphrasing *American Alloy Steel v. Armco, Inc.*, 777 S.W.2d 173 (Tex.App.—Houston [14th Dist.] 1989, no writ).  *See also, Capitol One, N.A., v. Custom Lighting & Electric, Inc.*, where the court held that the "*only* relationship alleged" between the

parties "is contractual, and, under Texas law, this type of relationship is not sufficient to sustain a claim for common law indemnity." 2010 WL 4923470 at *5-6 (S.D. Tex. Nov. 29, 2010) (emphasis added).

19.     By contrast, *Trax Personnel Services, Inc. v. Verspeeten Cartage Ltd.* is directly on point. 2000 WL 994334 (Tex. App.—Houston [1st Dist.] July 20, 2000, no pet. h.). There, the court disagreed with the defendant's reliance on *LTV Energy*, and found that contrarily, it became the indemnitor of the plaintiff due to the "direct business dealings" and "close business relationship" between the parties where "[plaintiff] relied on [defendant] to provide qualified personnel who met specific qualifications" in the performance of its services to the plaintiff. *Trax Personnel*, 2000 WL 994334 at *5. While the contract between the parties alone might not have supported the plaintiff's claim for indemnification, because "[defendant] was aware that [plaintiff] relied completely on [defendant]" to fulfill the requirements of the contract, and as a result, the plaintiff was removed from the processes the defendant underwent in the performance of its services for the plaintiff, the court found that the defendant became an indemnitor of the plaintiff when, by way of the defendant's negligent acts and omissions, it breached the contract and caused financial loss to the plaintiff. *Id*. at *6.

20.     Similarly, as Frontier alleged in its First Amended Third- Party Complaint, under Frontier's contract with Huntleigh, "Huntleigh agreed to handle all wheelchair services for Frontier." (ECF No. 32 at ¶ 41.) Further, as alleged in Frontier's Second Amended Third-Party Complaint, Huntleigh was the sole provider of wheelchair services for Frontier at ABIA at the time of the alleged incident. (ECF No. 39 at ¶ 49.)   As such, Frontier relied completely on Huntleigh's compliance with industry standards and corresponding local/state/federal regulations in providing wheelchair services. (ECF No. 39 at ¶¶ 49, 51-52.)   There were no Frontier

personnel present on site to oversee Huntleigh services on the day of the alleged incident, or at any other time. (ECF No. 39 at n. 1.) With this knowledge, and by agreeing to provide wheelchair services and other supervisory services at ABIA on behalf of Frontier, this Court could reasonably find that Huntleigh, like the defendant in *Trax Personnel*, became Frontier's indemnitor when its employees caused financial loss to Frontier by way of Plaintiff's alleged injury. Accordingly, Huntleigh's Motion fails as a matter of law.

**V.   FRONTIER HAS ALLEGED SUFFICIENT FACTS TO SUPPORT ITS CONTRIBUTION CLAIM.**

21.    Huntleigh argues that Frontier has failed to allege (i) that "the damages incurred by [Plaintiff] were due to the negligent conduct of Huntleigh" and (ii) "acts or omissions of Huntleigh in regard [sic] to any services provided to [Plaintiff]." (ECF No. 33 at p. 7.) To the contrary, Frontier has plainly stated that "Huntleigh, its agents, servants and employees failed" to ensure the safety of Plaintiff in her transport "from the airport terminal to the aircraft," which caused Plaintiff's alleged injury "during her transport between the airport terminal and the aircraft." (ECF No. 32 at ¶¶ 44-45.)  Frontier has alleged that such failure was a direct result of the negligent actions of "Huntleigh, its agents, servants and employees... in their operation, maintenance, control, care and supervision of their wheelchair services. Huntleigh's negligence was the direct and proximate cause of [Plaintiff's] injuries." (ECF No. 32 at ¶¶ 48-49.)

22.    Huntleigh argues that Frontier fails to sufficiently describe "wheelchair services" and so fails to meet its burden in establishing a claim for contribution. Huntleigh is, and was on the date of the alleged incident, a "contractor" for Frontier as defined in 14 CFR 382 (the "Air Carrier Access Act" or the "ACAA").  As such, Huntleigh is held to the standard for wheelchair service providers as set forth in the ACAA, which, to reiterate, Huntleigh admits its compliance on its own website. (Frontier asks the Court to take judicial notice of:

http://www.huntleighusa.com /aviationrelatedservices.html.) Because Huntleigh must follow the regulations set forth in the ACAA in providing wheelchair services to its clients (or risk violation of Federal law), and because Huntleigh has, in fact, billed Frontier for providing such services, as alleged in Frontier's First Amended Third-Party Complaint, Frontier has more than sufficiently described "wheelchair services" in its claim for contribution. (ECF No. 32 at ¶ 41); *Twombly*, 550 U.S. at 545 (2007).

23.     Huntleigh also implies that Frontier's allegations with regard to the involvement of the AFD and ABIA in the alleged incident negate any liability for Huntleigh. Any argument to this effect must fail, as Frontier has alleged in its First Amended Third-Party Complaint that Huntleigh is liable for Plaintiff's injuries because it acted negligently in, inter alia, failing to stop an improper transport of Plaintiff, which necessarily includes the improper transport of Plaintiff by the AFD, ABIA, or any other third party. (ECF No. 32 at ¶ 47.)[5]

### CONCLUSION

24.     Based on the foregoing, Frontier respectfully requests that this Court deny Huntleigh's Motion to Dismiss Frontier's claims under Federal Rule of Civil Procedure 12(b)(6). As enumerated above, Frontier has more than adequately pled sufficient factual allegations in support of its claims against Huntleigh. The fact that Frontier has not supplied to the Court "any supporting facts or documents" in the two months it has spent fighting Huntleigh's various dispositive motions is immaterial to the Court's decision based on the pleadings. *Ladjevardian*, 2013 WL 6709051 at *1 ("the district court must construe the allegations in the complaint

---

[5]   Frontier has named Huntleigh as a third party responsible for Plaintiff's alleged injury in its First Amended Third-Party Complaint. Section 33.011(6) of the Texas Civil Practice and Remedies Code defines a "responsible third party" as "*any* person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sough, whether by negligent act or omission . . . . by other conduct or activity that violates an applicable legal standard, or by any combination of these." (Emphasis added.)

favorably to the pleader and must accept as true all well-pleaded facts in the complaint"). Moreover, it is well-established that "discovery should precede consideration of dispositive motions when the facts sought to be discovered are relevant to consideration of the particular motion at hand," as is this case here. *Coastal States Gas Corp. v. Dept. of Energy*, 84 F.R.D. 278, 282 (D.C.Del. 1979).[6] Moreover, the fact that Frontier has named other Third-Party Defendants in its First Amended Third-Party Complaint does not excuse Huntleigh from liability as Huntleigh suggests in its Motion Dismiss.

25.     Frontier, therefore, requests that Huntleigh's request to dismiss Frontier's claims be denied. Frontier further requests any relief to which it demonstrates it may be entitled to at law or in equity.

DATED: November 29, 2017                    Respectfully submitted,


                                            By: */s/ Patrick J. Comerford*
                                                    Patrick J. Comerford, Esq.
                                                    State Bar No. 24096724

                                            **SMITH ROBERTSON, LLP**
                                            221 West 6th Street, Suite 1100
                                            Austin, Texas 78701
                                            p: (512)-225-5810
                                            f: (512)-225-5838
                                            pcomerford@smith-robertson.com

                                            **ATTORNEY FOR DEFENDANT/
                                            THIRD-PARTY PLAINTIFF
                                            FRONTIER AIRLINES, INC.**

---

[6] "It has also been consistently held that a complaint should not be dismissed unless it appears certain that [the complainant] is not entitled to relief under any state of facts which could be proved in support thereof. No matter how likely it may seem that the [complainant] will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to prove it." *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 406 (7th Cir. 1945).

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Joel A. Levine
Law Offices of Joel A. Levine, PLLC
5407 Parkcrest Drive, Suite 300
Austin, Texas 78731
*joel@joelalevine.com*

George S. McCall
Matthew Clay Sapp
Drinker Biddle & Reath LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
*george.mccall@dbr.com*
*matt.sapp@dbr.com*

Joanna Lippmann Salinas
Fletcher, Farley, Shipman & Salinas, L.L.P.
1717 West 6th Street, Suite 300
Austin, Texas 78703
Joanna L. Salinas, Esq.
*joanna.salinas@fletcherfarley.com*