

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MAXINE WHITE,<br><br>    Plaintiff,<br><br>v.<br><br>FRONTIER AIRLINES, INC.,<br><br>    Defendant/Third Party Plaintiff,<br><br>v.<br><br>THE AUSTIN FIRE DEPARTMENT, THE CITY OF AUSTIN AVIATION DEPARTMENT, AUSTIN-BERGSTROM INTERNATIONAL AIRPORT, THE CITY OF AUSTIN, AND FLIGHT SERVICES & SYSTEMS, INC.<br><br>    Third-Party Defendants. | §§§§§§§§§§§§§§§§§§§ | CIVIL ACTION NO. A-16-CV-1266-AWA<br><br>JURY DEMAND |

### DEFENDANT/THIRD-PARTY PLAINTIFF FRONTIER AIRLINES, INC.'S THIRD AMENDED THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff, Frontier Airlines, Inc. ("Frontier"), pursuant to Rule 14 of the Federal Rules of Civil Procedure, files this Third Amended Third-Party Complaint (the "Complaint") against the Austin Fire Department ("AFD"), the City of Austin Aviation Department (the "Aviation Department"), the Austin-Bergstrom International Airport ("ABIA"), the City of Austin ("City") (all of which are sometimes collectively referred to herein as the "City"), and Flight Services & Systems, Inc. ("FSS") and would respectfully show the Court as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over the dispute between Plaintiff Maxine White and Frontier.

2. This Complaint asserts that Third-Party Defendants, the City and FSS, are liable to Frontier for the liability, if any, Frontier may owe to Plaintiff. The claims asserted in this Complaint

arise out of the same facts and circumstances as those of the original complaint (ECF No. 1-2) filed by Plaintiff ("Plaintiff's Complaint"), so that this Court may exercise supplemental jurisdiction over this third-party action under 28 U.S.C. §1367(a).

3. Plaintiff alleges violation of the Americans with Disability Act ("ADA"). Therefore, this Court has jurisdiction over the federal question raised by Plaintiff's Complaint, as well.

4. Venue is proper in this Court, pursuant to 28 U.S.C. §1391, in that the events giving rise to this lawsuit occurred in this judicial district.

## II.
## FRONTIER'S CLAIMS ARE NOT BARRED BY IMMUNITY

5. The City is not subject to governmental immunity because it performed certain proprietary acts that form the basis of this suit.

6. In addition, the City is not subject to governmental immunity because Plaintiff's claims fall under one of the exceptions, namely premises liability, for ABIA and the Aviation Department's failure to provide the proper equipment for Plaintiff to access and board the Frontier flight.

7. Moreover, the City is not subject to governmental immunity because Plaintiff's claims also fall under the exception for premises liability in that the City, through the AFD, had actual notice of the lack of proper equipment and took negligent action for Plaintiff to access and board the aircraft.

8. Last, the City is not subject to governmental immunity because Plaintiff's claims, if proven, establish gross negligence on the part of the City, by and through its agents, servants and employees.

## III.
## PARTIES

9. Plaintiff Maxine White is a resident of Travis County, Texas.

10. Frontier is an airline carrier doing business in Austin, Texas.

11. Huntleigh USA Corporation ("Huntleigh"), former Third-Party Defendant in this action, has been dismissed.

12. The City has appeared and answered in this action.

13. FSS is an Ohio corporation with a principal place of business in Cleveland, Ohio.

## IV.
## PROCEDURAL BACKGROUND

14. Plaintiff's Complaint (ECF No. 1-2) is a personal injury case alleging that Plaintiff was injured while boarding a Frontier flight on June 10, 2015. Plaintiff alleges that on the day of the incident she was traveling from Austin, Texas to Denver, Colorado aboard a flight operated by Frontier. Plaintiff alleges that the boarding gate for the flight was not equipped with a handicap ramp for boarding, but rather passengers accessed and boarded the flight from the tarmac via stairs.

15. Plaintiff alleges that she suffered "severe physical injuries as well as mental and physical trauma" due to the manner in which she was boarded onto the plane. (ECF No. 1-2.)

16. Plaintiff alleges that she is seeking "monetary relief over $200,000" as well as exemplary damages. (*Id.*, at ¶5.)

17. Plaintiff further alleges that a wheelchair-accessible ramp was required to be available for boarding pursuant to the ADA, and alleges that, because it was not available, "Plaintiff was loaded into a 'rescue chair' and carried up the stairs despite expressing concern for her safety." (*Id.*, at ¶10.)

18. Plaintiff has set forth causes of action sounding in negligence, negligent training and supervision, vicarious liability, and infliction of bodily injury. (*Id.*, ¶¶14 – 32.)

19. Frontier removed the case to this Court on December 2, 2016. The initial scheduling conference was held on April 25, 2017. The Scheduling Order (ECF No. 10) provides that any additional parties must be added by July 21, 2017.

20.     Plaintiff amended her complaint on July 21, 2017, adding claims alleging that Frontier violated 14 CFR 382, The Air Carrier Access Act ("ACAA"), and Chapter 121 of the Texas Human Rights Code.

21.     Frontier brought a third-party action by summons and complaint filed on July 21, 2017. The City filed its answer on August 17, 2017. Huntleigh filed a motion to dismiss or, in the alternative, requested a more definite statement on August 25, 2017.

22.     Frontier amended its original third-party complaint on October 20, 2017. Huntleigh filed a second motion to dismiss Frontier's First Amended Third-Party Complaint on November 1, 2017. This Court granted Huntleigh's motion to dismiss on June 13, 2018 and ordered that Frontier file this Third Amended Third-Party Complaint on or before June 20, 2018.

## V.
## FACTUAL BACKGROUND GIVING RISE TO THE THIRD PARTY ACTION

### The City of Austin

23.     Frontier operates commercial air service operations at ABIA pursuant to a contract with the City. Pursuant to the contract, attached hereto as <u>Exhibit A</u>, the City "acting by and through the Executive Director of the Department of Aviation," leases Gate 24 to Frontier for its flight operations.

24.     Under the contract, the City must:

> operate, maintain, manage, and control the Airport in a first class, efficient, economical and businesslike manner, and in accordance with "Applicable Law." "Applicable Law" is a defined term in the contract meaning: . . . all federal, state and local laws, codes, ordinances, rules, regulations . . . of any Governmental Authority applicable to the parties, the Airport, or the Premises during the term of this Agreement.

25.     Article 9 of the contract entitled "Airline Alterations and Additions," drafted by the City, provides in Part B:

> B. **Modification Required to Accommodate Disabled Persons.** If Lessor is required by Applicable Law or an order of a Governmental Authority to modify the areas leased or occupied by Airline, or to install additional equipment therein, in order to accommodate Airline's disabled passengers during the term of this Agreement, Lessor shall give the Airline prompt notice of the receipt of such governmental order to undertake such modifications, or additions, in order that Airline may present its views, or objections, or participate in the planning of such, to the extent that its interest is involved. Then:
>
> (1) if the areas or equipment (including boarding assistance devices) are Exclusively or Preferentially leased to or used by Airline, the Rent paid by Airline for such areas or equipment shall be adjusted to include Lessor's cost to modify such areas or install additional equipment, amortized over a reasonable period of time in accordance with generally accepted accounting principles; and
>
> (2) if the areas or equipment are Common Use or Joint Use Facilities, the Rent paid by Airline and other users thereof shall be adjusted to include Lessor's cost to modify such areas or install additional equipment, amortized over a reasonable period of time in accordance with generally accepted accounting principles.
>
> (3) The Rent adjustment under this Article shall be effective as of the first day of the month following the completion of such modifications, or the installation of such equipment, as applicable.
>
> Unless otherwise specified in **Exhibit A**, each of Airline's Preferential Use Gates are equipped with passenger loading bridges. If Airline elects to operate any aircraft at the Airport which cannot be boarded using the loading bridges provided by Lessor, Airline shall be solely responsible to satisfy its obligations under the Air Carrier Access Act [49 U.S.C, 1374(c)] and the regulations promulgated thereunder (14 CFR §382.23) with respect to aircraft covered by 14 CFR Part 121.

(*See* Exhibit A at p. 29.)

26. Plaintiff was a customer of Frontier who was provided assistance by the City boarding a Frontier aircraft. As such, the City owed a duty of care to Plaintiff, including the duty to act with the same degree of care for Plaintiff's safety and well-being that would be exercised by a reasonably cautious and prudent person under the same or similar circumstances.

27. Plaintiff alleges that she was injured during her transport between the airport terminal and the aircraft.

28. Frontier submitted a public information request to the City on April 17, 2017. The City responded on April 24, 2017 with an incident report and a letter to Plaintiff that had not been disclosed to Frontier prior to that date. (*See* Exhibit B.)

29. The "Incident Detail Report" (the "IDR") indicates that firemen from Austin Fire Rescue 2 and 5:

> [R]esponded to Gate 1 as requested by a phone call from Frontier Airlines for assistance helping a disabled passenger board the 737. The aircraft was parked on the RON out from Gate 2 and with an air-stair attached. We used an aisle chair to take the patient up the stairs. (*See* Exhibit B at p. 5.)

30. Further, the IDR reads that the firemen, "provided manpower for a lift assist onto Frontier Airlines aircraft located at the hardstand using an aisle chair provided by Air Ops." (*Id.*)

31. In addition to the IDR, the City also provided an email response to a "Citizen Assistance Form" dated July 20, 2015 (the "CAF Response"). The CAF Response was addressed to Plaintiff's email address and was authored by Stephanie Tucker, Airport Property Manager for ABIA. In relevant part, Ms. Tucker stated:

> . . .the Aviation Department has purchased an air stair with a wheelchair lift. The air stair is designed to accommodate various aircraft classes that operate at the airport. The lift will be used in anomalies and emergencies to ensure the safe loading and disembarkation of passengers from planes. (*Id.*)

32. The City, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to safely transport Plaintiff, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft safely.

33. The City, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to provide the necessary required equipment to safely transport Plaintiff, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft.

34. The City, its agents, servants and employees breached its duties to Frontier and Plaintiff when they failed to stop an improper transport of Plaintiff, a third-party beneficiary of the contract and the City's services, from the airport terminal to the aircraft as required by their safety procedures and

applicable law.

35. The City, its agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their airport services and premises.

36. The City's negligence was the direct and proximate cause of Plaintiff's injuries.

37. The City's breach of contract is the direct and proximate cause of Plaintiff's injuries.

### Flight Services & Systems

38. Frontier hires contractors to provide wheelchair services for its customers at all airports to which it flies, including ABIA. Frontier does not provide any ground handling services through its own personnel, and in fact, does not employ any full-time Frontier personnel at ABIA at any time, including on the day of the incident. Frontier personnel were not directly involved with the interactions with Plaintiff on the day of the alleged incident.

39. Frontier and FSS were parties to a contract dated August 14, 2012 whereby FSS was to provide ground handling services for Frontier's customers. *See* Exhibit C. Such contract was in effect on the day of the alleged incident.

40. The contract incorporates by reference the 2004 Standard Ground Handling Agreement promulgated by the International Air Transport Association.[1]

41. Under the contract, FSS was obligated to provide, among other duties "passenger services," which included providing "special equipment, facilities, and specially trained personnel, for assistance to persons with reduced mobility":

---

[1] This Annex B is prepared in accordance with the simplified procedure whereby the Parties agree that the terms of the Main Agreement and Annex A of the SGHA of January, 2004 as published by the International Air Transport Association shall apply as if such terms were repeated here in full. By signing this Annex B, the Parties confirm that they are familiar with the aforementioned Main Agreement and Annex A.

> SECTION 2. PASSENGER SERVICES
> 2.1 General
> 2.1.1 Inform passengers and/or public about time of arrival and/or departure of Carrier's aircraft and surface transport.
> 2.1.2 Make arrangements for stopover, transfer and transit passengers and their baggage and inform them about services available at the airport.
> 2.1.3 When requested by the Carrier,
> (a) provide
> special equipment, facilities and specially trained personnel, for assistance to
> 1. unaccompanied minors.
> 3. VIPs.
> 4. transit without visa passengers (TWOVs).
> 5. deportees.
> 7. others, as specified by the Carrier.
> (b) arrange for
> special equipment, facilities and specially trained personnel, for assistance to
> 2. persons with reduced mobility (PRMs)
> 3. VIPs.
> 4. transit without visa passengers (TWOVs).
> 5. deportees.
> 6. special medical transport.
> 7. others, as specified by the Carrier.

42. With respect to departure, FSS was obligated to perform the following duties:

> 2.2.15 At the gate perform
> (a) verification of cabin baggage
> (b) boarding process
> (c) reconciliation of passenger numbers with aircraft documents prior to departure
> (d) other gate functions as specified by the Carrier

43. Specifically, FSS was required under the contract to provide the following for boarding of passengers:

> 3.6 Loading and Unloading
> 3.6.1 (a) Provide
> (c) Operate
> (1) passenger steps.
> (3) loading bridges.
> 3.6.3 (a) Provide
> (c) Operate
> equipment for loading and/or unloading.
> 3.6.4 (a) Provide
> delivery and pick-up of
> (1) Baggage
> (2) Mobility devices
> at aircraft doors or other agreed points

44. Further, FSS was obligated under the contract to have the "appropriate quantity of maintained and functioning . . . mobility assistive devices" to aid in the boarding of passengers requiring mobility assistance ("PRMs"). Plaintiff was identified as a PRM in her flight reservation.

> The Handling Company shall supply, operate, fuel, and maintain, at its own expense sufficient quantities of Ground Service Equipment (GSE) to perform the Services. Should the Carrier provide any GSE or other equipment, the Handling Company will be responsible to fuel and maintain (utilizing a progressive or preventative maintenance program approved by the Carrier) the GSE and other equipment at the Handling Company's sole expense, except that the Carrier will be responsible for all single item repairs in excess of $1,000, unless the repairs are required as a result of the Handling Company's negligence or failure to properly maintain. The minimum quantity of GSE (of appropriate specifications) shall be as follows:
> - one pushback tractor and have access to another as a spare
> - one tow bar and have access to another as a spare
> - two belt loaders
> - two baggage tractors
> - ten baggage carts
> - access to an air start unit
> - access to a GPU
> - access to a conditioned air cart
> - one lavatory service vehicle and access to another as a spare
> - one water service cart and access to another as a spare
> - access to air stairs
> - wheelchairs/aisle chairs – must have appropriate quantity of maintained and functioning wheelchairs, aisle chairs, and mobility assistive devices

45. With respect to liability, FSS agreed to "indemnify, defend and hold harmless" Frontier from personal injury claims related to the services FSS provided under the contract. As stated in the contract:

> "Notwithstanding Sub-Article 8.1, the Handling Company shall indemnify, defend and hold harmless the Carrier from and against any and all claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses of any kind or nature whatsoever, including, but not limited to, interest, court costs and attorney's fees, which in any way arise out of or result from any act(s) or omission(s) by the Handling Company (or anyone directly or indirectly employed by the Handling Company or anyone for whose acts the Handling Company may be liable) in the performance or non-performance of services under this Annex B, including but not limited to:
> - Death of or injury to any person or persons;
> - False arrest, detention, imprisonment, searches or malicious prosecution;
> - Libel, slander and/or defamation of character;
> - Violations of the right of privacy; or
> - The loss, theft, damage or destruction of property, including the property of the Carrier, the Handling Company and third persons.
>
> Furthermore, the Handling Company shall defend, indemnify and hold the Carrier harmless from all fines and/or penalties imposed by any governmental agency or entity governing the services provided under this Annex B, including, without limitation. DOT, FAA, CBP, EPA and/or any Airport Authority, and/or violation of any environmental laws or regulations, arising out of the acts or omissions of the Handling Company's employees, agents or subcontractors."

46. Significantly, pursuant to the contract, FSS was also required to obtain insurance covering liabilities relating to FSS services, while providing Frontier the added protection of designating it as an Additional Insured under FSS's insurance policy.

> The Handling Company must obtain and maintain in full force and effect during the term of this Agreement, at the Handling Company's sole expense, the following insurance coverage: (a) Commercial General Liability (including Premises, Products and Completed Operations, Hangarkeepers, Personal/Advertising Injury, and Contractual coverages) for bodily injury, including personal injury, and property damage, (b) Automobile Liability for owned, non-owned and hired vehicles and trailers, (c) Employer's Liability, and (d) Workers' Compensation, with the coverages and limits of liability not less than shown below.
>
> | | |
> |---|---|
> | Commercial General Liability: | $25,000,000 OCC/AGG |
> | Premises: | $25,000,000 OCC |
> | Products & Completed Operations: | $25,000,000 OCC |
> | Hangarkeepers: | $5,000,000 OCC |
> | Personal/Advertising Injury: | $5,000,000 OCC |
> | Contractual: | $5,000,000 OCC |
> | Automobile Liability: | $1,000,000 OCC |
> | Employer's Liability: | $1,000,000 OCC |
> | Workers' Compensation: | Per State/Federal Requirements, but not less than $1,000,000 OCC |

47. FSS is, and was on the date of the alleged incident, a "contractor" as defined in the ACAA at 14 CFR 382.7, and so is (and was) responsible for providing boarding assistance to Frontier passengers compliant with ACAA requirements set forth in Chapter 5, "Assisting Air Travelers with Disabilities Boarding, Deplaning and During the Flight."

48. Pursuant to ACAA Chapter 5, FSS had a duty to provide trained personnel with a "proficiency in the use of the boarding assistance equipment and procedures regarding the safety and dignity of passengers receiving boarding assistance."

49. Contemporaneous electronic correspondence between Frontier and the FSS General Manager, Ernestine Trejo, from the day following the date of the alleged incident confirms FSS personnel controlled, supervised and maintained the necessary equipment to facilitate the boarding of all Frontier passengers, including PRMs. (*See* Exhibit D.)

50. Plaintiff alleges that she was injured during her transport between the airport terminal and the aircraft.

51. FSS was responsible under its contract with Frontier for ensuring Plaintiff's safe transportation from the terminal to the plane, specifically arranging for the appropriate method of transportation.

52. Alternatively, if FSS did not arrange for wheelchair services to be provided to Plaintiff during her transport from the terminal to the aircraft on the day of the alleged incident, then FSS's omission would have been in breach of its agreement with Frontier for FSS to make such arrangements for Plaintiff on behalf of Frontier as Frontier's engaged third-party vendor. Any failure by FSS to make such arrangements for Plaintiff (as Frontier's customer) is in breach of its responsibility. Allowing an improperly trained third party (public servant or otherwise) to transport Plaintiff from the terminal to the plane is in further breach of that responsibility.

53. FSS, its agents, servants and employees, owed a duty of care to Plaintiff, including the duty to act with the same degree of care for her safety and well-being that would be exercised by a reasonably cautious and prudent person under the same or similar circumstances.

54. FSS, its agents, servants and employees were in breach of their duty to Frontier and Plaintiff when they failed to arrange for the transport of Plaintiff, a third-party beneficiary of the contract and FSS's services, from the airport terminal to the aircraft safely.

55. FSS, its agents, servants and employees were in breach of their duty to Frontier and Plaintiff when they failed to provide or arrange for the necessary equipment required to safely transport Plaintiff, a third-party beneficiary of the contract and FSS's services, from the airport terminal to the aircraft.

56. FSS, its agents, servants and employees were in breach of their duty to Frontier and Plaintiff when they failed to stop an improper transport of Plaintiff, a third-party beneficiary of the contract and FSS's services, from the airport terminal to the aircraft as required under the contract and applicable law.

57. FSS, its agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of their ground-handling services.

58. FSS's negligence was the direct and proximate cause o Plaintiff's injuries.

59. FSS's breach of contract is the direct and proximate cause of Plaintiff's injuries.

## VI.
## FIRST CAUSE OF ACTION AGAINST CITY
## (BREACH OF CONTRACT)

60. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

61. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide the services pursuant to the contract.

## VII.
## SECOND CAUSE OF ACTION AGAINST CITY
## (CONTRACTUAL INDEMNIFICATION)

62. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

63. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide the services pursuant to the contract.

64. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and the City, the Aviation Department, and/or ABIA for the wrongful and/or negligent conduct of the City, by and through the Aviation Department and/or ABIA, Frontier is entitled to indemnification from the City, the Aviation Department, and/or ABIA for any such damages and all of its costs, including attorney's fees.

## VIII.
## THIRD CAUSE OF ACTION AGAINST CITY
## (NEGLIGENCE)

65. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

66. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, the City, by and through the Aviation Department, ABIA, and their respective agents, servants and employees, acted negligently in the operation, maintenance, control, care and supervision of airport services and premises by failing to provide the proper equipment to transport Plaintiff.

67. The City, by and through the AFD, failed to exercise due care in transporting Plaintiff on the date of the alleged incident.

68. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, the City's agents, servants and employees acted negligently in their control and care of Plaintiff while transporting Plaintiff on the date of the alleged incident.

69. The City's conduct, by and through the negligent actions of the agents, servants and employees of the Aviation Department, ABIA, and the AFD, was the direct and proximate cause of Plaintiff's injuries.

## IX.
## FOURTH CAUSE OF ACTION AGAINST CITY
## (CONTRIBUTION)

70. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

71. The City, the Aviation Department, and/or ABIA breached its contract with Frontier by failing to provide services pursuant to the contract.

72. The AFD's agents, servants and employees breached their duty of control and care while transporting Plaintiff on the date of the alleged incident.

73. In the event and to the extent that Frontier is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, Frontier is entitled to contribution from the City for such portion of the judgment, in whole or in part, that is attributable to their conduct.

## X.
## FIRST CAUSE OF ACTION AGAINST FSS
## (BREACH OF CONTRACT)

74. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

75. FSS breached its contract with Frontier by failing to provide the services pursuant to the contract.

76. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and FSS by FSS, Frontier is entitled to indemnification from FSS any such damages and all of its costs, including attorney's fee

## XI.
## SECOND CAUSE OF ACTION AGAINST FSS
## (CONTRACTUAL INDEMNIFICATION)

77. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

78. FSS breached its contract with Frontier by failing to provide the services pursuant to the contract.

79. While denying all liability, if Frontier is found liable for damages to Plaintiff in connection with the claims asserted in Plaintiff's Complaint, and if such liability accrues as a result of a breach of the contractual relationship between Frontier and FSS for the wrongful and/or negligent

conduct of FSS, Frontier is entitled to indemnification from FSS for any such damages and all of its costs, including attorney's fees.

## XII.
## THIRD CAUSE OF ACTION AGAINST FSS
## (NEGLIGENCE)

80. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

81. FSS was obligated to exercise due care in overseeing the ground-handling of Frontier's passengers pursuant to its contract with Frontier. FSS failed to exercise due care in arranging and/or transporting Plaintiff on the date of the alleged incident.

82. When necessary, FSS was obligated to provide wheelchair services to Frontier passengers pursuant to the requirements set forth in the ACAA.

83. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, FSS and its agents, servants and employees acted negligently in the operation, control, care and supervision of ground handling, passenger, and wheelchair services by failing to provide the proper equipment to Plaintiff and failing to safely transport Plaintiff.

84. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, FSS and its agents, servants and employees acted negligently in their control and care of Plaintiff while arranging and/or providing Plaintiff's transportation on the date of the alleged incident.

85. FSS's conduct was the direct and proximate cause of Plaintiff's injuries.

## XIII.
## FOURTH CAUSE OF ACTION AGAINST FSS
## (CONTRIBUTION)

86. Frontier restates and incorporates by reference the allegations set forth above, as though they were fully set forth herein.

87. FSS breached its contract with Frontier by failing to provide services pursuant to the contract. In addition, FSS's agents, servants and employees acted negligently in their operation, maintenance, control, care and supervision of wheelchair services.

88. In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint, Frontier is entitled to contribution from FSS for such portion of the judgment, in whole or in part, that is attributable to FSS's conduct.

WHEREFORE, Defendant/Third-Party Plaintiff Frontier Airlines, Inc., demands judgment on its claims against Third-Party Defendants, the City of Austin and Flight Services & Systems, Inc., and requests such other relief as the Court deems just, proper and equitable.

DATED:  June 20, 2018

Respectfully submitted,

By: _____
Patrick J. Comerford, Esq.
State Bar No. 24096724

**SMITH ROBERTSON, LLP**
221 West 6th Street, Suite 1100
Austin, Texas 78701
p: (512)-225-5810
f: (512)-225-5838
pcomerford@smith-robertson.com

**ATTORNEY FOR DEFENDANT/THIRD-PARTY PLAINTIFF FRONTIER AIRLINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2018, I ~~electronically~~ filed the foregoing with the Clerk of the Court u~~sing the CM/ECF system which will send notification of such filing to the following:~~ and sent copies via email

Mr. Joel A. Levine
Law Offices of Joel A. Levine, PLLC
5407 Parkcrest Drive, Suite 300
Austin, Texas 78731
*joel@joelalevine.com*

Joanna Lippmann Salinas
Fletcher, Farley, Shipman & Salinas, L.L.P.
1717 West 6th Street, Suite 300
Austin, Texas 78703
Joanna L. Salinas, Esq.
*joanna.salinas@fletcherfarley.com*