IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MAXINE WHITE, § | |
|     Plaintiff, § | |
| § | |
| VS. § | |
| § | |
| FRONTIER AIRLINES, INC., § | |
|     Defendant, Third Party § | |
|     Plaintiff, § | |
| § | CIVIL ACTION NO. 16-CV-01266- |
| VS. § | AWA |
| § | |
| THE AUSTIN FIRE DEPARTMENT, § | |
| THE CITY IF AUSTIN AVIATION § | |
| DEPARTMENT, AUSTIN- § | |
| BERGSTROM INTERNATIONAL § | |
| AIRPORT, THE CITY OF AUSTIN § | |
| AND HUNTLEIGH USA § | |
| CORPORATION § | |
|     Third-Party Defendants. § | |

**THIRD-PARTY DEFENDANT CITY OF AUSTIN'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TO THE HONORABLE JUDGE OF SAID COURT:**

    COMES NOW, Third-Party Defendant the **City of Austin** ("the City") in the above styled and numbered litigation, and under FED. R. CIV. P. 56, moves the Court to enter summary judgment dismissing all claims and causes of action of Third-Party Plaintiff Frontier Airlines, Inc. ("FAI") as brought against the City, and in support of the Motion would show:

**I. INTRODUCTION AND SUMMARY OF THE MOTION**

    Plaintiff Maxine White ("Plaintiff") claims that on June 10, 2015, she was injured while boarding a plane (the "Incident") at Austin-Bergstrom International Airport (the "Airport"), which is owned and operated by the City. Plaintiff brought suit against FAI which, in turn, filed a Third-

Party Complaint against the City claiming FAI was entitled to both contractual and non-contractual relief, seeking indemnification and contribution, and alleging breach of contract and negligence.

As an initial matter, the very agreement on which FAI bases its contractual claims provides in the clearest language that FAI *owes* a duty of indemnity *to* the City and not the other way around as claimed by FAI. More importantly, the agreement includes an absolute waiver of liability by FAI for claims made by FAI's passengers.  Further, the City has not waived its right to governmental immunity, which is an absolute bar to the claims brought against the City in the Third-Party Complaint, including an absolute bar for contractual claims brought in federal court. Further, FAI has made no allegations which would otherwise waive the City's sovereign immunity. Finally, there are no claims as made by Plaintiff in her pleadings which would support either a direct or indirect (by contribution) claim against the City on which FAI can base its claims. As such, the City is entitled to summary judgment.

## II.  STATEMENT OF FACTS

Plaintiff claims that on June 10, 2015, she was traveling from Austin, Texas to Denver, Colorado on a plane owned and operated by FAI. [Doc. 11, ¶ 5].  She further claims that upon arrival at the Airport, she was informed that the boarding of the plane would entail climbing stairs from the tarmac to the plane as there was not a ramp or mechanical lift to assist Plaintiff onto the plane; a proposition made difficult as Plaintiff claims to be disabled. [Doc. 11, ¶¶ 6-9].  She was ultimately loaded onto the plane.  [Doc. 11, ¶ 10]. Plaintiff claims she was injured due to the lack of a sufficient means of loading her onto the plane as well as the manner in which she was eventually lifted onto the plane.  [Doc. 11, ¶ 11].  Plaintiff brought claims against FAI for negligence and negligence per se, negligent supervision and training, violations of the Americans With Disabilities Act ("ADA"), violation of 14 CFR §§ 382.95, and a violation of 382.141, TEX. HUM. RES. CODE §121.001.  [*See gen.* Doc. 11, §§ V(A-G)].

Subsequent to Plaintiff's filing suit against the City, FAI brought a third-party action against the City, both under its contract with the City and for negligence and contribution. [*See gen*. Doc. 53 – FAI's 3rd Amend. Third-Party Petition].

On October 1, 2009, the City and FAI entered into a Use and Lease Agreement ("Agreement") [Appx. A[1]], which was in full force an effect on the day of the Incident.[2] That Agreement provided, in pertinent part:

### ARTICLE 13 - INDEMNITY

A. **Indemnity.** AIRLINE[3] SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS LESSOR[4] AND ITS EMPLOYEES, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "INDEMNIFIED PARTIES"), FROM AND AGAINST ALL COSTS, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES, EXPENSES, AND COURT COSTS), LIABILITIES, DAMAGES, CLAIMS, SUITS, ACTIONS, AND CAUSES OF ACTIONS WHATSOEVER ("CLAIMS"), TO THE FULL EXTENT ARISING OUT OF (A) ANY BREACH OF THIS AGREEMENT BY AIRLINE OR ITS AGENTS, EMPLOYEES, AFFILIATES, SUBTENANTS, OR CONTRACTORS, (COLLECTIVELY THE "AIRLINE PARTIES") . . . (C) NEGLIGENCE, OR WILLFUL MISCONDUCT, OF THE AIRLINE PARTIES IN CONNECTION WITH THIS AGREEMENT, THE CONSTRUCTION, DEVELOPMENT, OPERATION OR USE OF THE PREMISES, OR THE AIRPORT. THE FOREGOING INDEMNITY OBLIGATIONS OF AIRLINE DO NOT APPLY TO THE EXTENT A CLAIM ARISES OUT OF THE NEGLIGENCE OR WILLFUL MISCONDUCT OF THE INDEMNIFIED PARTIES; BUT AIRLINE'S OBLIGATIONS UNDER THIS ARTICLE TO INDEMNIFY TO THE FULL EXTENT OF THE AIRLINE PARTY'S FAULT ARE NOT EXCUSED IF A CLAIM IS CAUSED IN PART BY, OR ARISES OUT OF, THE CONCURRENT NEGLIGENCE OR WILLFUL MISCONDUCT OF THE INDEMNIFIED PARTIES. AIRLINE SHALL ASSUME ON BEHALF OF THE INDEMNIFIED PARTIES AND CONDUCT WITH DUE DILIGENCE AND IN GOOD FAITH THE DEFENSE OF ALL CLAIMS AGAINST ANY OF THE INDEMNIFIED PARTIES. . . .

[*See* Appx. A, pp. 36-37, all emphasis in original text]. The same Indemnity section of the Agreement further provides:

B. **Waiver of Consequential Damages**. EACH PARTY HEREBY WAIVES ANY AND ALL RIGHTS TO RECOVER ANY CONSEQUENTIAL INCIDENTAL, EXEMPLARY OR PUNITIVE, DAMAGES FROM THE OTHER PARTY, INCLUDING, WITHOUT LIMITATION, LOST PROFITS

---

[1] Redacted for size and relevance.
[2] The Agreement was referenced in FAI's Third Amended Third-Party Complaint, [Doc. 53, ¶ 23], and attached in part (all the even-numbered pages) to the Amended Complaint. [Doc. 53-1]
[3] Note – Under the Agreement, FAI is the "Airline."
[4] Note – Under the Agreement, the City is the "Lessor."

OR INCOME, CLAIMS OF AIRLINE'S CUSTOMERS, SUBTENANTS, AND CONTRACTORS, AND OTHER SIMILAR CLAIMS OR DAMAGES.

[*See* Appx. A, p. 37, all emphasis in original text].

### III.  SUMMARY JUDGMENT STANDARD OF REVIEW

In *WC 3rd & Trinity, LP v. STK Rebel Austin, LLC*, this Court recently restated its summary of the legal standard under FED. R. CIV. P. 56.  2019 WL 433620, at *2 (W.D. Tex. 2019).  There is little reason to restate the standard as set forth by this Court, save that under the standard set forth by this Court, the City is entitled to a summary judgment and dismissal with prejudice from this lawsuit.

### IV.  ARGUMENT AND AUTHORITY

A.  **FAI's contract claims are barred as a matter of law**

1.  **Legal standard for contractual disputes**

In *WC 3rd & Trinity*, *supra*, this Court set forth the standard of review for interpreting an unambiguous contract:

> Determining whether a contract is ambiguous, and interpreting an unambiguous contract, are questions of law. [Internal citations omitted].  The court's job in interpreting a written contract is to carry out the parties' stated intentions. [Internal citation omitted].  Thus, in construing a contract, the court must give language its plain grammatical meaning unless it definitely appears that the intention of the parties would be defeated by doing so. [Internal citation omitted]. When a contract's meaning is disputed, the court's primary objective is to ascertain and give effect to the parties' intent as expressed by their language; objective manifestations of intent control, not what either party alleges they intended to say. [Internal citation omitted]. The Texas Supreme Court has stated that courts should "presume parties intend what the words of their contract say" and interpret contract language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise.
>
> > [W]ords must be construed in the context in which they are used. Context is not, however, confined to the two-dimensional contractual environs in which the words exist but may also encompass "the circumstances present when the contract was entered." This is so because words are "the skin of a living thought," and our quest is to determine, objectively, what an ordinary person

> using those words under the circumstances in which they are used would understand them to mean.
>
> [Internal citation omitted]. The Texas Supreme Court has also stated that if a court can give a clear and definite legal meaning to a contract, it is not ambiguous as a matter of law. [Internal citation omitted]. Courts should not find ambiguity simply because the parties disagree over a contract's meaning. [Internal citation omitted]. The primary concern in contract interpretation is to ascertain the true intentions of the parties as expressed in the instrument; courts should consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless.

*Id.* at *2-3.

### 2. No basis under the contract for FAI to claim contractual indemnity

FAI claims in its Third-Party Petition that it is entitled to contractual immunity. However, the express language of the Agreement establishes only to the contrary: "Airline shall defend, indemnify and hold harmless Lessor . . ." which translates to "FAI shall defend, indemnify and hold harmless the City of Austin . . ." [Appx. A, p. 36]. There is no indemnification provision in the Agreement favoring FAI. The indemnification only goes in one direction: in favor of the City. Therefore, as a matter of law, the City owes no duty to indemnify FAI.

### 3. FAI's contract claims are barred by sovereign immunity

Recently, the Hon. David Guaderrama of the Federal Court for the Western District of Texas provided an excellent summary of the courts' perspective on whether sovereign immunity protects a municipality from claims for breach of contract. *Yong Dong Wang v. Univ. of Texas at El Paso*, 2018 WL 2271382, at *6 (W.D. Tex. 2018). Judge Guaderrama directed the parties to *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007), wherein the Texas Supreme Court held that "absent special statutory permission, a party cannot pursue a breach of contract action against the State without first obtaining consent from the Legislature." *Id.* at 840; *see also Texas Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 858 (Tex. 2002) ("Texas law is clear. Only the Legislature can waive sovereign immunity from suit in a breach-of-contract

claim."); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001) ("Consequently, we conclude that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature.").

Immunity applies where a municipality is carrying out a governmental function. Regarding running an airport, the issue is clear: "An airport is expressly designated by statute to be a non-proprietary function." *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 2017 WL 6627542, at *3 (Tex. App.—Dallas 2017, pet. granted) (citing TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(10).  As noted by the Dallas Court of Appeals, "[t]he Legislature's designation of an airport as a governmental function, and not a proprietary one, applies to tort and breach of contract claims." *Id*. (citing *Wasson Interests, Ltd. v. City of Jacksonville ("Wasson I")*, 489 S.W.3d 427, 439 (Tex. 2016)).

In *Wasson II*, the Court concluded that "to determine whether governmental immunity applies to a breach-of-contract claim against a municipality, the proper inquiry is whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached that contract." 489 S.W.3d at 439.

Therefore, the only way that governmental immunity would not apply is if the Texas Legislature carved out a specific exception. While the Legislature has crafted a statute lifting immunity for certain contract disputes, for several reasons, the exception does not apply in the instant cause.  TEXAS LOCAL GOVERNMENT CODE §§ 271.151, *et seq*, allows parties contracting with governmental entities to sue for breach of certain contracts that involve the non-governmental entity providing goods or services to the governmental entity. TEX. LOC. GOV'T CODE § 271.152. But the limitations on recovery provided under the Code demonstrate the types of contracts open to judicial review.  Specifically, the recovery is limited to monetary relief for the balance due or

amount owed by the municipality under the contract. TEX. LOC. GOV'T CODE § 271.153(a).[5] Moreover, consequential damages are specifically excluded from recovery. TEX. LOC. GOV'T CODE § 271.153(b)(1). In the instant cause, the contract at issue is neither for goods or services provided by FAI to the City, and for which they are seeking an alleged balance due.

Further, even if FAI could otherwise show that the immunity waiver under the Local Government Code could be applied to the present cause, that same section of the Code specifically excludes a waiver of immunity for suits brought in federal court. TEX. LOC. GOV'T CODE § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court.").

Since there is no waiver immunity under the Texas Local Government Code for the type of contract entered into by the parties and this is a claim brought in federal court, FAI's contract claims are barred by sovereign immunity.

**B.   FAI's "Negligence" claim is barred as a matter of law because FAI has failed to state a claim upon which relief may be granted**

In order for FAI to prevail in this cause against the City, FAI would have to prove: (1) the City owed a legal duty to FAI, (2) the City breached that legal duty, and (3) that breach of duty proximately injured or damaged FAI. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). But the initial sentence of FAI's negligence cause of action belies the fact that its claim for this cause of action is actually no more than a contribution claim. FAI begins its statement regarding the duty owed thusly: "In the event and to the extent that any party is adjudged to have any liability to Plaintiff with respect to any claims asserted in Plaintiff's Complaint . . ." [Doc. 53, ¶ 66]. Further, FAI identifies no damages or injuries incurred separately by FAI, but rather, only the injuries to Plaintiff, [Doc. 53, ¶ 69], and contingent on a judgment against FAI by Plaintiff. [Doc. 53, 38].

---

[5] Actual damages are also recoverable as damages related to "the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use." TEX. LOC. GOV'T CODE § 271.153(c).

As stated by the United States Supreme Court, a plaintiff suing in federal court must allege an "irreducible constitutional minimum" of three elements: (1) an injury in fact—in other words, an invasion of a legally protected interest which is (a) concrete and particularized (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between plaintiff's alleged injury and defendant's alleged behavior; and (3) a likelihood that the alleged injury will be redressed by a decision in plaintiff's favor.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992); *see also Deutsch v. Abijaoude*, 2017 WL 913813, at *2 (W.D. Tex.) (Austin, A.) (this Court's quoting *Lujan*, *supra*).  Damages claims contingent upon future events that may, or may not, occur does not meet that "irreducible constitutional minimum." *Johnson v. Dodson*, 2013 WL 3242683, at *2 (N.D. Tex. 2013).

Texas state courts, likewise, have found that a claim for contribution is not a separate and independent cause of action, but is merely a derivative claim, contingent on a liability finding in favor of the original plaintiff.   *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992); *see also Compass Bank v. Vey Fin., LLC*, 2012 WL 1952290, at *2 n.5 (W.D. Tex. 2012); *Wells Fargo Bank, N.A., v. Peirce*, 2016 WL 4734634, at *9 (S.D. Tex. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL 4733162 (S.D. Tex. 2016*); Equitable Recovery, L.P. v. Heath Ins. Brokers of Texas, L.P.*, 235 S.W.3d 376, 387 (Tex. App.—Dallas 2007, pet. dism'd) ("There can be no contribution or indemnity between two parties based on a direct claim between them."). Moreover, the claim asserted by FAI would need to overcome the sovereign immunity of the City for the purported tort claim.

FAI has neither identified nor alluded to any claim or cause of action separate and apart from a contribution cause of action contingent on a judgment in favor of Plaintiff and against FAI, and it certainly has not alleged a direct tort claim for which the City's immunity has been waived.

Therefore, as a matter of law, the City is entitled to a summary judgment on FAI's claim of negligence asserted directly against the City.

**C.     FAI contractually waived contribution claims arising from claims by FAI's customers**

Under the same "Indemnity" clause for which FAI has mistakenly sought indemnification, FAI contractually agreed that as between the contracting parties, the "claims of Airlines (FAI's) passengers" would be "consequential damages," and those consequential damages are waived by FAI.  [Ex. A, p. 37 ("**Waiver of Consequential Damages**. EACH PARTY HEREBY WAIVES ANY AND ALL RIGHTS TO RECOVER ANY CONSEQUENTIAL INCIDENTAL, EXEMPLARY OR PUNITIVE, DAMAGES FROM THE OTHER PARTY, INCLUDING, WITHOUT LIMITATION . . . CLAIMS OF AIRLINE'S CUSTOMERS").

Texas recognizes the rights of parties to contractually waive their rights to recovery for personal injury damages even before that right has been established.  *McCloskey v. Clubs of Cordillera Ranch, LP*, 2017 WL 6502444, at *2 (Tex. App.—San Antonio 2017, no pet.).  As the *McClosky* court noted, "[b]ecause pre-injury releases involve an extraordinary shifting of risk, the law imposes fair notice requirements that must be met for such releases to be enforceable." *Id*. at *2. "The fair notice requirements include the express negligence doctrine and the conspicuousness requirement." *Id*.

The conspicuity requirement requires that "'something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it,'" *id*. (quoting *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993), and contemplates the conspicuousness identified in TEX. BUS. & COMM. CODE § 1.201(10). *Id*.  This requirement is met if the affected language is in all capital letters. *Id*.

"The express negligence doctrine requires that the parties' intent to release liability from the releasee's own future negligence must be expressed in unambiguous terms within the four

corners of the agreement." *Id*. at *3 (quoting *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 569 (Tex. App.—San Antonio 2004, no pet.)).

In the instant cause, the waiver provision is in all-caps, while the title is further in bold letters. Further, the claims being released are made in the most unambiguous of terms. FAI expressly agreed to waive recovery from the City for all claims made by its customers, which would of course include the Plaintiff. Therefore, as a matter of law, the City is entitled to a summary judgment and dismissal with prejudice as to all of FAI's claims.

**D.    FAI's claim for contribution based on negligence is barred by sovereign immunity**

Moreover, even if FAI had not contractually waived its contribution claim, the City is entitled to governmental immunity from that claim. As an initial matter, it bears repeating that "[t]he Legislature's designation of an airport as a governmental function, and not a proprietary one, applies to tort and breach of contract claims." *Vizant Techs.*, 2017 WL 6627542, at *3. Therefore, without a specific waiver of immunity by the Texas Legislature, the claims by FAI against the City are barred. Assuming there is a statute waiving immunity, a claimant must "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). It is not simply a matter of claiming waiver, but rather the party seeking waiver must identify by reference the statute being relied upon for waiver. *Martinez v. City of Dallas, Texas*, 2017 WL 4298134, at *4 (N.D. Tex. Sept. 28, 2017).

In the instant cause, FAI has claimed waiver of immunity in three ways:

1. No immunity because it was performing a proprietary function;
2. Immunity waived due to premises liability for failure to provide proper equipment and "took negligent action for Plaintiff to access and board the plane";
3. Immunity waived due to gross negligence of the City.

[Doc. 53, § II].

Regarding FAI's first claim of waiver, the same has already been addressed above. "An airport is expressly designated by statute to be a non-proprietary function," *Vizant Techs.,* 2017 WL 6627542, at *3, and "[a] plaintiff may not split various aspects of a city's operation into discrete functions and re-characterize certain of those functions as proprietary." *Id*.

Regarding FAI's second claim of waiver, the same addresses two issues and two separate portions of the TTCA: (1) use of "equipment" under TEX. CIV. PRAC. & REM. CODE § 101.021(2), and (2) premises liability under TEX. CIV. PRAC. & REM. CODE § 101.022.

Finally, while a showing of gross negligence may waive a municipality's immunity under some, expressly delineated circumstances, *see, e.g.* TEX. CIV. PRAC. & REM. CODE §§ 75.007 and 101.058 (recreational use statute), FAI has pleaded neither facts nor law that would support a waiver of immunity on a claim of gross negligence against the City in this case.

> **1.    As a matter of law, immunity is not waived because no notice was given under TEX. CIV. PRAC. & REM. CODE § 101.101.**

In order to claim a waiver of immunity, a claimant must provide the municipality with notice of the claim under TEX. CIV. PRAC. & REM. CODE § 101.101, which includes, at a minimum, a description of the damage or injury claimed, the time and place of the incident, and a description of the incident itself.  TEX. CIV. PRAC. & REM. CODE § 101.101(a).  Under the City of Austin Charter, that notice must be given within 45 days of the date of the alleged injury.  *See* City of Austin Charter, Art. XII, § 3.[6]  That notice can be waived if the municipality had actual notice that there was some injury received and that the City might be responsible for that injury.  TEX. CIV. PRAC. & REM. CODE § 101.101(c).

---

[6] https://library.municode.com/tx/austin/ordinances/code_of_ordinances?nodeId=937010.

As an initial matter, neither Plaintiff nor FAI contend the City was ever given written notice that would meet the requirements of §101.101(a). Rather, FAI contends that the City received actual notice, but alleges further that the actual notice was "actual notice of the lack of proper equipment and took negligent action for Plaintiff to access and board the aircraft." [Doc. 53, ¶ 7]. But the notice required, even actual notice under §101.101(c), is the same information required under §101.101(a): a subjective awareness that the municipality's fault produced or contributed to the claimed injury as well as the identity of the parties involved. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)).

There is no dispute that the City was aware of Plaintiff's transport into the plane on the day in question. However, there is no evidence that the City had actual knowledge that Plaintiff suffered an injury as a result of the City's alleged improper conduct. Without proper and timely notice compliant with the Texas Tort Claims Act, governmental immunity is not waived.

**2.     As a matter of law, immunity is not waived under TEX. CIV. PRAC. & REM. CODE § 101.021(2).**

Section 101.021(2) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE provides: "A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). Regarding a waiver of immunity based on negligence, FAI makes two claims. First, FAI claims that the Airport and the City of Austin Aviation Department "fail[ed] to provide the proper equipment for Plaintiff to access the Frontier flight." [Doc. 53, ¶ 6]. Second, FAI claims the City "had actual notice of the lack of proper equipment and took negligent action for Plaintiff to access and board the aircraft." [Doc. 53, ¶ 7].

Both of FAI's waiver claims above make the same general allegation: that the City failed to use or provide certain equipment. In *Texas Nat. Res. Conservation Com'n v. White*, 46 S.W.3d 864 (Tex. 2001), the Texas Supreme Court discussed the very type of claim now put forward by FAI: that the City waived its immunity due to the negligent nonuse of equipment. *Id*. at 869-870. As the Court stated, "[t]his Court has never held that non-use of property can support a claim under the Texas Tort Claims Act." *Id*. at 869. The Court further noted, "[w]e have refused to broaden section 101.021's waiver provision to include both use and non-use because doing so 'would be tantamount to abolishing governmental immunity, contrary to the limited waiver the Legislature clearly intended.'" *Id*. at 869-70 (quoting *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996)). Because FAI's allegations regarding waiver are, in fact, the nonuse rather than the negligent use of tangible property, FAI's general negligence claim is barred as a matter of law.

### 3. As a matter of law, immunity is not waived under TEX. CIV. PRAC. & REM. CODE § 101.022(a).

Section 101.022(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE provides: "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE § 101.022(a). Regarding a waiver of immunity for premises liability, FAI makes two claims; both under the singular statement that "Plaintiffs claims fall under one of the exceptions, namely premises liability." [Doc. 53, ¶¶ 6-7]. But the actual "premises liability" claim in both cases is an alleged failure to provide equipment. [Doc. 53, ¶¶ 6-7].

Just as in matters not otherwise subject to immunity, because different standards apply for negligence claims as opposed to premises liability claims, a claimant seeking recovery under the TTCA can seek recovery under either theory of liability, but not both. *Sampson v. Univ. of Texas*

*at Austin*, 500 S.W.3d 380, 385 (Tex. 2016). "Whether a claim is based on a premises defect is a legal question." *Id*.

"[A] claim for a condition or use of real property is a premises defect claim under the Tort Claims Act." *Id*. In *Simpson*, the Texas Supreme Court warned against recasting a premises claim as a negligence claim. *Id*. at 386. Likewise, there is nothing to suggest that the Court would look any less uneasily at an attempt to recast a negligence claim as a premises liability claim. "[W]ith 'premise[s] defects, liability is predicated not upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant for premise and special defects as specified in section 101.022 of the . . . Tort Claims Act.'" *Id*. at 387 (quoting *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995)). "The distinction between a claim based upon a premises defect and one based upon a use or condition of tangible personal property 'lies in whether it is the actual use or condition of the tangible personal property itself that allegedly caused the injury, or whether it is a condition of real property—created by an item of tangible personal property—that allegedly caused the injury.'" *Texas A & M Univ. v. Boucher*, 2018 WL 4781052, at *2 (Tex. App.—Waco 2018, no pet.) (quoting *Sampson*, 500 S.W.3d at 388).

In neither Plaintiff's live pleading nor FAI's live pleading do either allege any defect in the condition of the Airport property as a producing cause of Plaintiff's injuries. FAI appears to take the position that the property condition at issue was the failure to have a gangway or lift; or as expressed by FAI in its Third Amended Third-Party Petition, "a failure to provide the proper equipment," [Doc. 53, ¶ 6]. However, that does no more than to, again, highlight the fact that this is not a premises liability case, but rather a failed attempt to apply §101.021(2) for lack of use of tangible equipment. Neither Plaintiff nor FAI have alleged a defect of real property that would

allow for the application of §101.022(a) as a waiver of sovereign immunity. Therefore, FAI's claim is barred as a matter of law.

    **4.**    **As a matter of law, immunity is not waived under Chapter 121 OF THE TEXAS HUMAN RESOURCES CODE**

Both Texas state and federal courts have addressed whether a municipality is protected by immunity under TEX. HUM. RES. CODE §§ 121.001, *et seq*. The State courts have rejected a finding of waiver because the provision does not contain a "clear and unambiguous waiver of sovereign immunity." *Schraer v. Texas Health & Human Services Com'n*, 2014 WL 586036, at *4 (Tex. App.—Corpus Christi Feb. 13, 2014, no pet.). The Federal courts have rejected waiver for the additional reason under the Eleventh Amendment that "[a] state's consent to being sued in federal court must be unequivocally expressed." *O'Neil v. Texas Dep't of Criminal Justice*, 2010 WL 11534609, at *3 (N.D. Tex. Aug. 20, 2010). As there is no express waiver of immunity under Chapter 121, the claims against the City are barred as a matter of law.

**E.**    **FAI's claim for contribution based violations of federal statutes and codes would be barred as a matter of law**

The federal courts have directly addressed the right of parties, or lack thereof, to seek contribution for claims based on federal statutes, and have rejected any such claims unless the statute or code specifically allows for the same. "Federal courts will not provide additional remedies when Congress has already established what it considers to be sufficient remedial procedures." *Marable v. Dep't of Commerce*, 2018 WL 3900903, at *2 (N.D. Tex. 2018), *report and recommendation adopted*, 2018 WL 3869577 (N.D. Tex. Aug. 15, 2018) (citing *United States v. Fausto*, 484 U.S. 439, 455, 108 S. Ct. 668, 677, 98 L. Ed. 2d 830 (1988)).

In *Salazar v. S. San Antonio Indep. Sch. Dist.*, 690 Fed. Appx. 853 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 369, 199 L. Ed. 2d 265 (2017), the Fifth Circuit Court of Appeals discussed the implications of Congress not including certain remedies when allowing for a private cause of

action. Quoting the U.S. Supreme Court, the *Salazar* court noted, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id*. at 859 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). Therefore, the "remedies available are those 'that Congress enacted into law.'" *Id*. (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

Neither the ADA nor 14 CFR §382.95 and 14 CFR §382.141 include allowances for contribution as a remedy. As to the former, the ADA does not mention contribution as a remedy, and a claim for contribution under the ADA has been expressly rejected by the Federal Court for the Northern District of Texas. *Mims v. Dallas County*, 2006 WL 398177, at *2 (N.D. Tex. Feb. 17, 2006).

In *Mims*, the court was faced with one governmental entity, the University of Texas Medical Branch at Galveston ("UTMB"), seeking contribution by way of a third-party claim, from another governmental entity, Dallas County, for claims made against the former under both the ADA and the Rehabilitation Act, 42 U.S.C.A. § 504. The court initially turned to what it believed to be the only case directly on point at that time that had addressed the contribution issue, *Bowers v. National Collegiate Athletic Ass'n*, wherein the Third Court of Appeals had solidly rejected a claim for contribution under the ADA. *Id.* at *3 (citing *Bowers*, 346 F.3d 402 (3d Cir. 2003)). The *Bowers* court noted that the critical decision on whether there was a right to contribution lay in a determination of the intent of Congress. *Bowers*, 346 F.3d at 429. In passing the ADA, Congress had included a pervasive scheme for remedying violations of the Act, with the presumption therefore that any remedies not included in the ADA were rejected by intent and not by neglect. *Id*. at 425-26. Moreover, the U.S. Supreme Court had rejected similar contribution claims under Title VI of the Civil Rights Act from which the ADA was derived. *Id*. at 432-33 (citing *Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 94-95,

101 S. Ct. 1571, 1582, 67 L. Ed. 2d 750 (1981)).  Therefore, "[u]nable to find any indication that Congress intended to recognize a right to contribution to complement the other judicially-implied remedies under Title II of the ADA and section 504 of the Rehabilitation Act, the *Bowers* court refused to infer such a right. *Mims*, 2006 WL 398177, at *4 (citing *Bowers*, 346 F.3d at 433).  The *Mims* court, not finding no reasoning to the contrary, agreed with *Bowers* that there is no right of contribution under the ADA.  *Id*.; *see also Independent Living Ctr. of S. California v. City of Los Angeles, Cal*., 973 F. Supp. 2d 1139, 1153 (C.D. Cal. 2013) (citing with favor *Bowers* in holding there is no implied right of contribution or indemnity under the ADA).

In the same vein, and for the same reasons the ADA would not allow for a claim of contribution, the same applies with even more effect regarding Plaintiff's claims under 14 C.F.R. §§ 382.1, *et seq*.  As noted in the related provision, the regulations only apply to U.S. carriers with respect to all operations of their aircraft.  14 C.F.R. § 382.7.  There is nothing to indicate any intent to apply the regulations to others outside those for which Congress stated the regulations were to apply to.  Moreover, neither 14 C.F.R. Part 382, nor the Air Carrier Access Act ("ACAA)", 49 U.S.C.A. § 41705, provide for a private cause of action.  *Segalman v. Sw. Airlines Co*., 895 F.3d 1219, 1227, n.12 (9th Cir. 2018).  The court in *Segalman* relied, in part, on a Fifth Circuit Court of Appeals decision, circa 2018, which, in applying *Sandoval, supra*, also found that there was no private cause of action under the ACAA, noting that "although the ACAA prohibits airlines from discriminating on the basis of disability, it 'does not expressly provide a right to sue the air carrier.'"  *Stokes v. Southwest Airlines*, 887 F.3d 199, 202 (5th Cir. 2018) (quoting *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011)).  More direct to the claims made by Plaintiff under the 14 C.F.R. Part 382, the court noted, "the ACAA combines with other federal aviation statutes to form a comprehensive ***administrative*** scheme 'designed to vindicate fully the rights of disabled persons'" [emphasis in original text].  *Id*. (quoting *Lopez*, 662 F.3d at 597).

Needless to say, if Plaintiff has no cause of action against FAI under the ACAA and its regulatory provision, there could not be a claim for contribution against the City, irrespective of the inclusion or exclusion of any nonexistent statutory remedies.

F. **Plaintiff cannot recover from FAI under the ADA, which bars any contribution claim**

Plaintiff brings her ADA claim against FAI under 42 U.S.C. § 12101, commonly referred to as Title III of the ADA. Title III of the ADA. Title III of the ADA prohibits discrimination in commercial facilities, places of public accommodation, and specified public transportation. 42 U.S.C. §§ 12181–12184. Airlines are not included in the statutory definitions of "commercial facilities," 42 U.S.C. § 12181(2), or "public accommodation," 42 U.S.C. § 12181(4). In addition, aircraft are expressly excepted from the statutory definition of "specified public transportation," 42 U.S.C. § 12181(10). "Rather, airplanes and their accompanying terminals and depots are covered by another disability-access statute, the pre-ADA Air Carriers Access Act." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004); *see also* G*ilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1003 (9th Cir. 2013) ("Title III does not cover the operations of any portion of any airport that are under the control of an air carrier."); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 598-99 (2d Cir. 2011) ("Air carriers are not liable under [the ADA] for disability discrimination in the provision of services related to air transportation").

As any claims by FAI for contribution would, by necessity, be claims for which FAI could be liable, and since the ADA is inapplicable to airline services, and as the substitute statute, the ACAA, does not allow for a private cause of action, FAI cannot be liable to Plaintiff under the ADA, so neither can the City be liable to FAI for contribution.

**G.     Plaintiff's "Infliction of Bodily Injury" claim does not state a claim upon which relief may be granted.**

Merely out of a matter of completeness, the City would summarily address any contribution claim arising out of Plaintiff's claim for "infliction of bodily injury" by noting that no such claim, without more, exists. In effect, Plaintiff contends that merely because she was injured, irrespective of duty or fault, she is entitled to a recovery. To the extent Plaintiff makes the claim as a claim under a theory of *res ipsa loquitur*, the city would note that "*res ipsa loquitur* is not a cause of action but a theory of causation for a claim of negligence." *Rivas v. Greyhound Lines, Inc.*, 2015 WL 13710122, at *1, n.1 (W.D. Tex. 2015) (citing *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex. 1974) (stating that *res ipsa loquitor* is a "rule of evidence whereby negligence [m]ay be inferred"). Therefore, Plaintiff has not stated a cause of action by merely claiming injury without more.

## V.  Conclusion

There has been no express waiver between FAI and the City, nor has FAI pleaded any waiver which would extinguish the City's right to sovereign immunity, nor even provided the requisite notice to even bring claims against the City. Therefore, FAI's claims fail as a matter of law. Moreover, even if the City could not rely on sovereign immunity to deflect FAI's claims, FAI's claims and causes of action would still be barred under (a) its duty to fully indemnify and defend the City, and (b) its waiver by contract of any right it might have had to seek contribution for injury to one of its passengers. Finally, even if the Court were to ignore the City's rights as agreed to by FAI in their Agreement, any claims would be barred as a matter of law as being otherwise protected by immunity or by the express rulings of courts rejecting contribution as a viable cause of action. For each of theses reasons, as set forth more fully above, the City is entitled to Summary Judgment and dismissal with prejudice.

WHEREFORE PREMISES CONSIDERED, Third Party Defendant City of Austin prays that this Court grant its Motion for Summary Judgment and dismiss all claims and causes of action brought against the City; and for such other and further relief to which the City may be justly entitled.

Respectfully submitted,

**FLETCHER, FARLEY,
SHIPMAN & SALINAS, L.L.P.**
2530 Walsh Tarlton Lane, Suite 150
Austin, Texas 78746
(512) 476-5300
FAX (512) 476-5771

By: /s/Joanna Lippman Salinas
Joanna Lippman Salinas
State Bar No. 00791122
joanna.salinas@fletcherfarley.com
Attorneys for Defendant, *City of Austin*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Third-Party Defendant City of Austin's Motion for Summary Judgment** has been provided to the offices of:

Joel A. Levine
**LAW OFFICE OF JOEL A. LEVINE, PLLC**
1515 W. Koenig Lane, Suire 100
Austin, Texas 78756

Patrick J. Comerford, Esq.
**SMITH ROBERTSON, LLP**
221 W. 6th Street, Suite 1100
Austin, Texas 78701

Kendall Kelly Hayden
**COZEN O'CONNOR**
1717 Main Street, Suite 3100
Dallas, Texas 75201

by Electronic Service, in accordance with the Federal Rules of Civil Procedure, on March 5, 2019.

/s/Joanna Lippman Salinas
Joanna Lippman Salinas