# EXHIBIT A

# AUSTIN- BERGSTROM INTERNATIONAL AIRPORT USE AND LEASE AGREEMENT



# THE CITY OF AUSTIN, TEXAS

# &

# FRONTIER AIRLINES, INC.

### AUSTIN-BERGSTROM INTERNATIONAL AIRPORT

### AUSTIN, TEXAS

FRONTIER AIRLINES, INC.
USE AND LEASE AGREEMENT

AUSTIN-BERGSTROM INTERNATIONAL AIRPORT

TABLE OF CONTENTS

ARTICLE 1 – DEFINITIONS AND INTERPRETATIONS ..................................................................... 1

ARTICLE 2 - TERM OF AGREEMENT ..................................................................................... 6

ARTICLE 3 - AIRPORT OPERATION AND MAINTENANCE ............................................................ 6

ARTICLE 4 - RIGHTS OF AIRLINE ......................................................................................... 7

ARTICLE 5 - RENTALS AND FEES ....................................................................................... 11

ARTICLE 6 - PASSENGER FACILITY CHARGES  (PFC) .............................................................. 20

ARTICLE 7- ASSIGNMENT AND USE OF TERMINAL GATES, TICKET COUNTER POSITIONS AND OTHER LEASED SPACE…………………………………………………………………….. 22

ARTICLE 8 - ACCOMMODATION OF REQUESTING AIRLINES……………………………………….. 26

ARTICLE 9 – AIRLINE ALTERATIONS AND ADDITIONS……………………………………………… 28

ARTICLE 10 – TERMINAL DEVELOPMENT SND CONSTRUCTION/RELOCATION OF AIRLINE PREMISES…………………………………………………………………………………….30

ARTICLE  11 - AIRPORT SECURITY AND SAFETY ................................................................... 32

ARTICLE 12 – COMMON USE SYSTEMS AND COMMUNICATIONS SERVICES.................................. 33

ARTICLE 13 – INDEMNITY ................................................................................................ 36

ARTICLE 14 – INSURANCE ............................................................................................... 38

ARTICLE 15 - ENVIRONMENTAL MATTERS.......................................................................... 41

ARTICLE 16 -  INSPECTION BY LESSOR .............................................................................. 47

ARTICLE 17 -  RULES AND REGULATIONS ........................................................................... 47

ARTICLE 18 -  ASSIGNMENT AND SUBLETTING .................................................................... 47

ARTICLE 19 -  SURRENDER OF POSSESSION ........................................................................ 48

ARTICLE 20 - FORCE MAJEURE ........................................................................................ 49

ARTICLE 21 – DEFAULT AND REMEDIES............................................................................. 49

ARTICLE 22 - DAMAGE OR DESTRUCTION OF LEASED PREMISES ........................................... 53

**ARTICLE 23 - NON WAIVER OF RIGHTS** ................................................................................................ 54

**ARTICLE 24 - INVALIDITY OF CLAUSES** ............................................................................................... 55

**ARTICLE 25 - APPROVAL BY LESSOR** .................................................................................................... 55

**ARTICLE 26 -  ECONOMIC NON-DISCRIMINATION** ............................................................................. 55

**ARTICLE 27 - PUBLIC USE, FEDERAL GRANTS AND NONDISCRIMINATION** .................................. 55

**ARTICLE 28 - TITLE TO AIRLINE INSTALLED IMPROVEMENTS AND PROPERTY** ......................... 58

**ARTICLE 29 - NOTICES** ............................................................................................................................ 58

**ARTICLE 30 – BOND ORDINANCES** ....................................................................................................... 59

**ARTICLE 31 - MISCELLANEOUS PROVISIONS** ..................................................................................... 61

.

# AUSTIN-BERGSTROM INTERNATIONAL AIRPORT
# USE AND LEASE AGREEMENT

**THIS AGREEMENT** ("Agreement") is made and entered into by and between the CITY OF AUSTIN, TEXAS (the "Lessor"), acting by and through the Executive Director of the Department of Aviation ("Department") and Frontier Airlines, Inc., a corporation, organized and existing under the laws of the State of Colorado ("Airline") with its principal place of business at 7001 Tower Road, Denver, Colorado 80134 as of the 1st day of October 2009 (the "Effective Date").

## ARTICLE 1 – DEFINITIONS AND INTERPRETATIONS

A.      **Definitions**.  In this Agreement, the following words and phrases shall be defined as follows:

 (1) Additional Rent means any fees, charges, or other amounts payable by Airline to Lessor under this Agreement other than Rent, Landing Fees, and PFCs.

 (2) Affiliate means an Air Carrier that does not have in effect a use and lease agreement or airline operating agreement with Lessor for operations at the Airport, and (a) is the parent or a subsidiary of Airline, (b) shares an International Air Transport Association flight designator code with Airline at the Airport, or (c) otherwise operates under essentially the same trade name, and uses essentially the same livery, as Airline at the Airport; provided, however, a major airline, as such term is defined by the FAA, may be not considered an Affiliate of another major airline if such classification is based solely on a code-share arrangement described in clause (b) of this definition.

 (3) Air Carrier means an air transportation company, as defined in 49 U.S.C. §40102, which has been granted an operating certificate under 49 U.S.C. Chapter 411.

 (4) Air Carrier Service means Airline's business of a scheduled air carrier, certificated or otherwise authorized by the United States Government to engage in the business of commercial air transportation of persons, property, cargo, and mail.

 (5) Airfield Area means the airfield area described on **Exhibit B** and**,** except as otherwise provided herein, all facilities, equipment, and improvements now or hereafter located thereon, including the runways, taxiways, and facilities at the Airport for the purpose of controlling and assisting arrivals, departures and operations of aircraft using the Airport.

.

use of the PDS for data transmission. Shared Tenant Services include data transmission lines (Frame Relay, ISDN, and T1) or Airline may choose to use the PDS to connect to an alternate provider at the demarcation point. Airline shall be responsible for, and pay all data communication service charges, including installation, maintenance, moves, adds, changes; excluding, however installation and move charges that arise out a relocation of Airline's Premises under Article 10.

(5) <u>Television Service.</u> Airline may contract with a provider of cable access television service in the Austin area for television service in those areas of the Premises it leases on an Exclusive Use basis. Airline may not install television sets in the passenger holdrooms, the ticket lobby, or other area accessible by the public. Airline may not install satellite dishes, antennae or similar receiving devices on the Premises. Airline shall be responsible for, and pay, all charges, including installation, maintenance, moves, adds, changes, PDS and cable channel charges.

(6) <u>Invoicing and Payment</u>. Airline must apply for and sign the Airport Shared Telephone System Terms of Usage. Airline understands that it shall be billed monthly for its PDS and STS charges under this Article. Payment for PDS and STS charges is not included in the monthly Premises rent and must be paid by Airline as provided in the STS Terms of Usage. Non-payment of telephone service charges shall be grounds for discontinuance of service and an event of default under this Agreement.

(7) <u>Computer Networks</u>. Airline shall, at its sole expense, procure, install and maintain all computer networks within the Premises.

## ARTICLE 13 - INDEMNITY

A. **Indemnity.** AIRLINE SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS LESSOR AND ITS EMPLOYEES, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "INDEMNIFIED PARTIES"), FROM AND AGAINST ALL COSTS, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES, EXPENSES, AND COURT COSTS), LIABILITIES, DAMAGES, CLAIMS, SUITS, ACTIONS, AND CAUSES OF ACTIONS WHATSOEVER ("CLAIMS"), TO THE FULL EXTENT ARISING OUT OF (A) ANY BREACH OF THIS AGREEMENT BY AIRLINE OR ITS AGENTS, EMPLOYEES, AFFILIATES, SUBTENANTS, OR CONTRACTORS, (COLLECTIVELY THE "AIRLINE PARTIES") (B) ANY

.   FALSE REPRESENTATION OR WARRANTY MADE BY THE AIRLINE PARTIES HEREUNDER, (C) NEGLIGENCE, OR WILLFUL MISCONDUCT, OF THE AIRLINE PARTIES IN CONNECTION WITH THIS AGREEMENT, THE CONSTRUCTION, DEVELOPMENT, OPERATION OR USE OF THE PREMISES, OR THE AIRPORT. THE FOREGOING INDEMNITY OBLIGATIONS OF AIRLINE DO NOT APPLY TO THE EXTENT A CLAIM ARISES OUT OF THE NEGLIGENCE OR WILLFUL MISCONDUCT OF THE INDEMNIFIED PARTIES; BUT AIRLINE'S OBLIGATIONS UNDER THIS ARTICLE TO INDEMNIFY TO THE FULL EXTENT OF THE AIRLINE PARTY'S FAULT ARE NOT EXCUSED IF A CLAIM IS CAUSED IN PART BY, OR ARISES OUT OF, THE CONCURRENT NEGLIGENCE OR WILLFUL MISCONDUCT OF THE INDEMNIFIED PARTIES. AIRLINE SHALL ASSUME ON BEHALF OF THE INDEMNIFIED PARTIES AND CONDUCT WITH DUE DILIGENCE AND IN GOOD FAITH THE DEFENSE OF ALL CLAIMS AGAINST ANY OF THE INDEMNIFIED PARTIES. MAINTENANCE OF THE INSURANCE REQUIRED UNDER THIS AGREEMENT SHALL NOT AFFECT AIRLINE'S INDEMNITY OBLIGATIONS. AIRLINE MAY CONTEST THE VALIDITY OF ANY CLAIMS, IN THE NAME OF LESSOR OR AIRLINE, AS AIRLINE MAY IN GOOD FAITH DEEM APPROPRIATE, PROVIDED THAT THE EXPENSES THEREOF SHALL BE PAID BY AIRLINE, AND AIRLINE SHALL MAINTAIN ADEQUATE INSURANCE TO COVER ANY LOSS(ES) WHICH MIGHT BE INCURRED IF SUCH CONTEST IS ULTIMATELY UNSUCCESSFUL. IN NO EVENT MAY AIRLINE ADMIT LIABILITY ON THE PART OF LESSOR WITHOUT THE PRIOR WRITTEN CONSENT OF THE AUSTIN CITY ATTORNEY.

B.   **Waiver of Consequential Damages**. EACH PARTY HEREBY WAIVES ANY AND ALL RIGHTS TO RECOVER ANY CONSEQUENTIAL INCIDENTAL, EXEMPLARY OR PUNITIVE, DAMAGES FROM THE OTHER PARTY, INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR INCOME, CLAIMS OF AIRLINE'S CUSTOMERS, SUBTENANTS, AND CONTRACTORS, AND OTHER SIMILAR CLAIMS OR DAMAGES.

C.   **Claims Against Airline**.   If any claim, demand, suit, or other action is made or brought by any person or entity against the Airline arising out of or concerning this Agreement, the Airport, or the Premises, Airline shall give written notice thereof to Lessor within ten (10) business days after being notified of such claim, demand, suit, or action. Such notice shall enclose a true copy of all written claims, and if the claim is not written or the information is not discernable from the written claim, state the date of notification of any such claim, demand, suit, or other action; the names and addresses of the person, firm, corporation, or other entity making such claim or

.

that instituted or threatened to institute any type of action or proceeding, the basis of such claim, action, or proceeding; and the name of any person against whom such claim is being made or threatened. Such written notice shall be delivered either personally or by mail and shall be directly sent to the Austin City Attorney, 301 West 2nd Street, Austin, Texas 78701, and to Lessor.

## ARTICLE 14.  INSURANCE

A. Airline shall, without expense to Lessor, obtain and cause to be kept in force throughout the term of this Agreement, including any renewals, or extensions thereof, the insurance policies and coverages as provided in this Article.  Airline shall deliver certificates of insurance, for itself and its contractors, verifying the coverage listed below to the Director prior to commencing operations pursuant to this Agreement. If coverage period ends during the Term of the Agreement, Airline shall, prior to the end of the coverage period, forward a new Certificate of Insurance to Lessor as verification of continuing coverage for the duration of the Term of this Agreement.

    (1) <u>Workers' Compensation and Employers' Liability</u>. Worker's compensation insurance shall be provided with limits consistent with statutory benefits outlined in the Texas Workers' Compensation Act (Texas Labor Code Title 5) and minimum policy limits for employers' liability of $1,000,000 bodily injury each accident, $1,000,000 bodily injury by disease policy limit and $1,000,000 bodily injury by disease each employee.

    (2) <u>Commercial General Liability Insurance.</u> Commercial General Liability Insurance shall be provided with a minimum bodily injury and property damage per occurrence limit of $250,000,000 for coverage A (Bodily Injury and Property Damage) and coverage B (Personal and Advertising Injury); Personal Injury with respect to other than passengers limited to $25,000,000; and $1,000,000 product/completed operations minimum limit of liability.  The policy shall contain blanket contractual liability coverage for liability assumed under this contract.

    (3) <u>Hangarskeepers Insurance</u>. Hangarskeepers Liability shall be provided with a minimum limit of $10,000,000.

.

(4) <u>Aircraft Liability Insurance</u>.  Aircraft Liability insurance shall be provided for all operator owned or operated aircraft with a minimum bodily injury and property damage per occurrence limit of $250,000,000 for coverage Bodily Injury and Property Damage, and $250,000,000 for Personal and Advertising Injury; Personal Injury with respect to other than passengers limited to $25,000,000.  The policy shall contain:

    (a) Non-Owned Aircraft Liability with a minimum limit of $250,000,000

    (b) Blanket contractual liability coverage for liability assumed under the Lease or Permit

(5) In lieu of the Commercial General Liability, Hangarkeepers, and Aircraft Liability coverages described in Sections 14.A 2, 3, and 4, Airline may provide Aviation Liability Insurance having the same coverages and policy limits as described above.

(6) <u>Business Automobile Liability Insurance</u>. Business automobile liability insurance shall be provided for all owned, non-owned and hired vehicles with a minimum combined single limit of $1,000,000.

(7) <u>Insurance Ratings</u>.  Insurance coverage shall be written by financially responsible insurance companies, reasonably acceptable to Lessor, which are experienced in insuring major airlines and recognized in the aviation industry as being of sufficient size and financial strength to insure the risks identified in this Article. Lessor will accept workers' compensation coverage written by the Texas Workers' Compensation Insurance Fund.

(8) <u>General Requirements.</u>

    (a) Approval of insurance by Lessor and the required minimums shall not relieve or decrease the liability or responsibility of the Airline hereunder and shall not be construed to be a limitation of liability on the part of the Airline.

    (b) All endorsements naming Lessor as additional insured, i.e. waivers, and notices of cancellation endorsements as well as Certificates of Insurance shall indicate:

> Austin-Bergstrom International Airport
> Department of Aviation
> Attn:  Airport Property Management
> 3600 Presidential Boulevard, Suite 411
> Austin, Texas 78719

    (c) The "other" insurance clause shall not apply to Lessor where Lessor is

.

    additional insured shown on any policy. It is intended that policies required in this Agreement covering Lessor and the Airline, shall be considered primary coverage as applicable.

(d)     If insurance policies are not written for amounts specified above, the Airline shall carry Umbrella or Excess Liability Insurance for any differences in amounts specified. If Excess Liability Insurance is provided, it shall follow the form of the primary coverage.

(e)     Lessor shall be entitled, upon request to inspect copies of policies and endorsements thereto at a mutually acceptable location and time, and may make any reasonable requests for deletion or revision or modification of particular policy terms, conditions, limitations, or exclusions except where policy provisions are established by law or regulations binding upon either of the parties hereto or the underwriter on any such policies or if the change would result in the imposition of an additional premium or cost which neither the Airline or Lessor is willing to assume.

(f)     Lessor reserves the right to review insurance requirements set forth during the Term of this Agreement and to make reasonable adjustments to insurance coverage, limits, and exclusions when deemed necessary and prudent by Lessor based upon changes in statutory law, court decisions, the claims history of the industry or financial condition of the insurance company as well as the Airline. Airline shall have ninety (90) days in which to implement any changes under this section.

(g)     The Airline shall not cause any insurance to be canceled nor permit any insurance to lapse during the term of this Agreement that is related to Airline's operations at the Airport. All policies shall be endorsed to require thirty (30) days' prior notice to Lessor before cancellation or termination.

(h)     Airline shall be responsible for deductibles and self-insured retentions, if any, stated in policies. All deductibles or self-insured retentions shall be disclosed on the certificates of insurance.

.

      (i)    All policies shall be endorsed to waive subrogation or other rights of recovery against Lessor.

(9)    <u>Other</u>.  Insofar as insurance provides protection against liability for damages to third parties for personal injury, death, and property damage, Lessor shall be included as an additional insured to the extent of Airline's indemnity obligations under this Agreement. Such liability insurance coverage shall also extend to damage, destruction, and injury, to Lessor-owned or Lessor-leased property and Lessor personnel, and caused by or resulting from work, acts, operations, or omissions of Airline, its officers, agents, employees, contractors or subcontractors on the Airport.  Lessor shall have no liability for any premiums charged for such coverage, and the inclusion of Lessor as a named insured is not intended to, and shall not, make Lessor a partner or joint venturer with Airline in its operations on the Airport.

### ARTICLE 15 - ENVIRONMENTAL MATTERS

A.    **Definitions**. In this Article:

(1)    <u>Environmental Laws</u> - shall refer to all Applicable Laws intended for the protection of the environment, or that govern, control, restrict, or regulate the use, handling, treatment, storage, discharge, disposal, or transportation of Hazardous Materials. Environmental Laws, specifically include but are not limited to, the National Environmental Policy Act; the Comprehensive Environmental Response, Compensation and Liability Act; and as amended by the Superfund Amendments and Reauthorization Act of 1986; the Safe Drinking Water Act; the Oil Pollution Control Act of 1990; the Resource Conservation and Recovery Act, the Hazardous Substances Transportation Act, the Toxic Substances Control Act, the Clean Water Act, the Clean Air Act, the Superfund Authorization and Recovery Act, the Occupational Safety and Health Administration Hazard Communication Standards, the Texas Hazardous Substances Act, the Texas Water Quality Control Act.

(2)    <u>Hazardous Materials</u> - shall refer to all substances whose use, handling, treatment, storage, disposal, discharge, or transportation is governed, controlled, restricted, or regulated by Environmental Laws, that have been defined, designated or listed by any

.

F. **Governing Law**.  This Agreement shall be deemed to have been made in, and be construed in accordance with the laws of the State of Texas.

G **Inspection of Lessor Records**.  Airline, at its expense and upon reasonable notice, shall have the right to inspect the books, records, and other data of the Lessor relating to the provisions and requirements hereof provided such inspection is made during regular business hours.

H. **Successors and Assigns**.  All of the terms, provisions, covenants, stipulations, conditions, and considerations in this Agreement shall extend to and bind the legal representatives, successors, and permitted assigns of the respective parties hereto.

I. **Entire Agreement**.  This Agreement, together with all exhibits attached hereto, constitutes the entire Agreement between the parties on the subject matter hereof. This Agreement supersedes and replaces all prior agreements between the parties hereto with respect to the leasing by Airline of the Premises, including the Amended and Restated Austin-Bergstrom International

**EXHIBITS**

| | |
|---|---|
| A-1 | Description of Premises |
| A-2 | Premises Drawings - Terminal Area |
| B | Airport Layout Plan - Airfield Area Description |
| C | Airport Layout Plan - Apron Description |
| D-0 | Airport Rates and Charges - General Principles and Methodology |
| D-1 | Basic Project Costs and Funding Sources |
| D-2 | Allocation of Project Costs to Cost Centers - Debt Service |
| D-3 | Acreage Allocation Worksheet |
| D-4 | Summary of Debt Service |
| D-5 | Operations and Maintenance Expenses |
| D-6 | Terminal Space Analysis |
| D-7 | Terminal Space Allocations |
| D-8 | Terminal Rental Rates |
| D-9 | Terminal Apron Fees |
| D-10 | Terminal Equipment Fees |
| D-11 | Landing Fees |

**IN WITNESS WHEREOF**, the parties hereto have executed these presents to be effective as of October 1, 2009.

**APPROVED AS TO FORM:**

_____
Assistant City Attorney

**CITY OF AUSTIN, TEXAS**

By: _____
Jim Smyth
Executive Director of Aviation
Date: 5/6/10

**ATTEST:**

By: _____
Name: Jeff Campbell
Title: Manager - Properties

**FRONTIER AIRLINES, INC.**

By: _____
Scott Durgin
Vice President – Customer Service
Date: 4-26-10